In the Matter of the Application of Anton Alzmann, Respondent, for a Writ of Mandamus against Thomas F. Maher, Individually and as Deputy City Clerk of the City of New York in Charge of the Issuance of Marriage Licenses in the Borough of Brooklyn, Appellant.

Second Department, December 1, 1930.

*Joseph P. Reilly* [*Arthur J. W. Hilly, Corporation Counsel,* with him on the brief], for the appellant.

*Louis L. Cantwell* [*Joseph T. P. Sullivan* with him on the brief], for the respondent.

Hagarty, J. The question here presented is whether or not the petitioner, respondent, was entitled to the issuance of a marriage license by the defendant, appellant, upon facts which were presented by the petitioner to the defendant in support of his application for a marriage license, from which facts it clearly appeared that the petitioner was a married man and had not been legally divorced.

The petitioner is a resident of New York and was married in this State in September of 1923. A child was born of the marriage and is now five years of age. The petitioner and his wife separated in April of 1929, but they and their daughter continued to reside

in the State of New York. On the date of their separation the petitioner instituted an action for a divorce from his wife in a court in Sonora, Mexico, upon the sole ground of desertion. Neither the petitioner nor his wife pretended to take up a residence or domicile in Mexico, nor did either appear in person at the trial of the action. Both were represented by local attorneys. The attorney for the petitioner's wife filed an answer denying the allegation of desertion, but offered no defense at the trial, and, as a result, a decree of absolute divorce was granted to the petitioner on the 9th day of December, 1929.

On the 14th day of February, 1930, petitioner made application to the defendant for a license to marry another woman, informed the defendant that he had obtained a decree of divorce in Mexico and submitted to defendant a certified copy of such decree. The defendant then referred the matter to the corporation counsel's office for an opinion as to the validity of the divorce. Petitioner was advised that the divorce was invalid. As a result, defendant refused to issue the petitioner a license to marry and this proceeding followed.

The learned Special Term granted a peremptory mandamus order requiring defendant, as deputy city clerk of the city of New York, in charge of the issuance of marriage licenses in the borough of Brooklyn, to issue a marriage license to the petitioner, upon the ground that the duties of the defendant as deputy city clerk are ministerial and that it was not for him " to inquire into the efficacy of the decree of a sister State or even of a foreign tribunal for the purposes of determining whether there exists a ' legal impediment.' "

In my opinion, it is not the duty of the defendant, as deputy city clerk, to issue a license to marry to an applicant merely because the application appears regular upon its face. The law authorizes the city clerk to make further inquiries to determine whether or not the applicant is entitled to the marriage license. If, as the result of this inquiry, it appears that the applicant is not entitled to the license, it is the duty of the clerk to refuse it, and not to grant it. Notwithstanding the presentation of the formal document issued by one of the States of Mexico, the facts disclose that the petitioner continued not only his residence but his domicile in New York. He does not claim to have even visited Mexico during the period. Papers were forwarded by him and by his wife to lawyers who put through the proceeding. Petitioner claims that under the laws of Mexico residence is not necessary. Perhaps it is not; but the trouble with this argument is that neither Mexico nor any State in Mexico ever had jurisdiction of the parties or the subject-matter, and could not obtain jurisdiction by legislation

without consent of the State where the law is allowed to operate. To hold otherwise would be to establish a rule by which any married resident of the State of New York may institute an action for divorce in a foreign country by sending a petition to an attorney in that country and give to the court jurisdiction by having the defendant file a notice of appearance in the action and thus obtain a divorce upon a ground not recognized in this State. The laws of this State prescribe the conditions under which the contract of marriage may be entered into and terminated. Since the petitioner and his wife, residents of this State, were married and continue to reside here, they are subject to all of the laws of this State. Therefore, in procuring the Mexican decree of divorce, they violated the law, procedure, and public policy of this State, and the decree of divorce they thus obtained is invalid. (*Atherton* v. *Atherton*, 155 N. Y. 129; *Hubbard* v. *Hubbard*, 228 id. 81; *Andrews* v. *Andrews*, 188 U. S. 14; *Haddock* v. *Haddock*, 201 id. 562.)

The law relative to the issuance of marriage licenses is section 15 of the Domestic Relations Law (as amd. by Laws of 1929, chap. 633). The pertinent parts of such section are as follows: " It shall be the duty of the town or city clerk when an application for a marriage license is made to him to require each of the contracting parties to sign and verify a statement or affidavit before such clerk or one of his deputies, containing the following information. * * * The said clerk shall also embody in the statement if either or both of the applicants have been previously married, a statement as to whether the former husband or husbands or the former wife or wives of the respective applicants are living or dead and as to whether either or both of said applicants are divorced persons, if so, when and where and against whom the divorce or divorces were granted and shall also embody therein a statement that no legal impediment exists as to the right of each of the applicants to enter into the marriage state. The town or city clerk is hereby given full power and authority to administer oaths and may require the applicants to produce witnesses to identify them or either of them and may also examine under oath or otherwise other witnesses as to any material inquiry pertaining to the issuing of the license; provided, however, that in cities of the first class the verified statements and affidavits may be made before any regular clerk of the city clerk's office designated for that purpose by the city clerk. If it appears from the affidavits and statements so taken, that the persons for whose marriage the license in question is demanded are legally competent to marry, the said clerk shall issue such license, * * *. Any town or city clerk who shall issue a license to marry any persons one or both of whom

shall not be at the time of the marriage under such license legally competent to marry without first requiring the parties to such marriage to make such affidavits and statements * * *, which shall show that the parties authorized by said license to be married are legally competent to marry, shall be guilty of a misdemeanor and on conviction thereof shall be, fined in the sum of one hundred dollars for each and every offense."

I have already pointed out the reasons advanced by the learned justice at Special Term for granting this order. Since the defendant is a ministerial officer, he holds that defendant may ask only certain questions and must issue a license if the answers thereto do not disclose, upon their face, some definitely described statutory prohibition to the issuance of a license to the applicants.

While it is true the defendant is a ministerial officer, he is invested with a measure of judicial or quasi-judicial authority. (*People ex rel. Steward* v. *Railroad Comrs.*, 160 N. Y. 202; *People ex rel. Loughran* v. *Railroad Comrs.*, 158 id. 421; *People ex rel. Schau* v. *McWilliams*, 185 id. 92.) The following is quoted from the opinion in the last-cited case: " Here we must not be misled by names. The term ' judicial ' is used in judicial literature, in opinions and text books, in two distinctly different senses. The action of an administrative or executive officer or board may involve the exercise of judgment and their action is quite often termed judicial. Thus in *Mills* v. *City of Brooklyn* (32 N. Y. 489) it was held that * * * the action of the municipal authorities in designing the system of sewerage was judicial."

The Domestic Relations Law, section 15, neither prescribes nor designates all the information that may or shall be embodied in the application for a license, nor does it limit or indicate any limit to the questions that may or shall be asked, except by the test of materiality. Whether or not the Mexican divorce decree is valid is highly material, for, if it be invalid, the petitioner cannot lawfully marry again, and the defendant may not issue a license for such a marriage. It would be inconsistent for a court of this State to direct an officer to issue a marriage certificate when the known facts would justify an indictment and conviction for bigamy if the marriage were contracted.

The order should be reversed upon the law and the facts, with fifty dollars costs and disbursements, and the motion for peremptory mandamus order denied, with ten dollars costs.

Lazansky, P. J., Kapper, Carswell and Scudder, JJ., concur.

Peremptory mandamus order reversed upon the law and the facts, with fifty dollars costs and disbursements, and motion for peremptory mandamus order denied, with ten dollars costs.