ADKINS, J.
On November 20, 1918, defendant Georgia Foster Mat-tingly contracted a marriage with one Louis It. Mattingly at Rockville, Maryland. Immediately thereafter they established their matrimonial domicile in the District of Columbia and both of them have since resided continuously in said District.
Some time in 1932 defendant Georgia Mattingly and her husband separated. Thereafter Georgia Mattingly and plaintiff Thomas A. Cover became acquainted and in the course of time formed a mutual desire to marry each other. In order to accomplish this it was necessary that the defendant Georgia Mattingly be divorced from her then husband. She could not obtain a divorce under the laws of this District. She employed an individual, who, under the style of the Mexican Divorce Bureau, was then engaged in the District of Columbia in the business of procuring divorces in Mexico.
Defendant Georgia Mattingly thereafter filed a petition in the Civil Court of San Juan del Rio County, state of Durango, Mexico; process of some kind from said court was served on said Louis R. Mattingly in the District of Columbia and the latter filed an affidavit in said suit. Thereafter on December 6, 1932, a decree was granted in that proceeding purporting to dissolve the bonds of matrimony between said Georgia Mattingly and Louis B. Mattingly. Throughout said proceedings both said parties remained in the District of Co *220 lumbia; neither of them was ever in Durango, nor did said Georgia Mattingly intend to obtain a residence in that state or to abandon her residence here. Plaintiff herein paid some part of the expense of said divorce proceeding and assisted said Georgia Mattingly in so far as he could to obtain said decree.
Said decree contained the following statements, among others—
“San Juan del Rio, Dgo., Mex., December 6th, 1932.— Seen for sentencing this Divorce case, filed the applicant by Georgia Verner Foster against Lewis R. Mattingly, being the first one from Trenton, New Jersey, USA., 32 years old; — It appears: First, That the said Georgia Verner Foster, filed an application for divorce, at this Court, the 19th day of last November, and she expressed that she married Lewis R. Mat-tingly, the 20th day of November, 1918, at Rockville, State of Maryland, USA.: * * * that there was an incompatibility of characters between her and her husband, legal reason for asking divorce * * * Second: The said 19th day of last November, papers were sent to Washington, in order to notify the first Decree to Mr. Mattingly, as it appears from the case;— Third: The said Lewis R. Mattingly sent to this Civil Court and submit to the same, his Affidavit, in which he agreed to get divorced and confessed all the facts of the application;— LEGAL CONSIDERATIONS: — Marriage performance was legally proved with the marriage certificate showed and presented by plaintiff, that is a legal proof according the law of the personal statute and the latin maxim ‘Locus Regit Actum,’ because in civil conditions of persons, their country laws goes after themselves; and besides, defendant confessed all the facts of application, and one of them is the marriage performance; Second: — Legal ground for divorce, characters incompatibility, was equally proved with the confession of defendant, made at his Affidavit; and this is a legal and complete proof * ”.
On December 16, 1932, said Georgia Mattingly and plaintiff Thomas A. Cover attempted to contract a legal marriage at Gettysburg, Pennsylvania. After said marriage ceremony *221 they returned to the District of Columbia and thereafter lived together in the District of Columbia as husband and wife until September 20, 1933, both of them believing themselves to be legally married.
Said Louis It. Mattingly believed said divorce decree to be valid, and in reliance on such belief thereafter married again and a child has been born as the result of that marriage. The second wife also believed said divorce decree to be valid and married him in good faith.
The present suit was filed December 18, 1933, by plaintiff Thomas A. Cover for the annulment of the aforesaid marriage between him and defendant Georgia Mattingly.
1. The rule on this question is—
“* * * that to give the courts of any state jurisdiction over the marriage relation between a husband and his wife, one of the parties, at least, must have a domicil within that state.”
The foregoing is quoted from Justice Cooley in People v. Dawell, 25 Mich. 247, 254.
Counsel for plaintiff in an able and convincing brief has traced the current American decisions on this subject from 1806 to the present time. As counsel states, the foregoing—
“rule is predicated upon the fundamental principles that marriage creates a status in which the state has a vital interest, that to each state belongs the sovereign and exclusive right to regulate the status of its citizens, and that it is imperative to the preservation of its social order that no state permit a foreign state to interfere with the domestic relations of its citizens.”
The law is so well settled on this subject that it is unnecessary to discuss the cases at length. I cite only a few of those set forth in counsel's brief.
The rule has been applied even though the statute of the state in which the divorce was granted contained no residential requirements. Jackson v. Jackson, 1 Johns (NY) 424, 426.
*222 An early statute of the Territory of Utah conferred upon the Probate Court of that Territory power to grant a divorce to a person who is a resident of the Territory “or wishes to become one.” There are a number of decisions in the state courts passing upon the validity of decrees obtained in the courts of that Territory by persons who had not become residents of the Territory. Invariably such decrees were held invalid on the ground that the court had no jurisdiction to determine the marital status of residents of other states. Hood v. State, 56 Ind. 263, 268; State v. Armington, 25 Minn. 29; Litowitch v. Litowitch, 19 Kan. 451, are a few of such decisions.
The rule has been applied by a number of state courts in passing upon the validity of foreign divorces. In Reik v. Reik, 109 N. J. Eq. 615; affirmed 112 N. J. Eq. 234, the husband actually went to the state of Morelos, Mexico, for the purpose of obtaining a divorce, and did obtain one in that state. It was held that he had not obtained a bona fide domicile in Mexico, and that the divorce was invalid.
In Alzmann v. Maher, 246 NYS 60; 231 App. Div. 139, the facts were similar to those in the present case. The divorce was obtained by the husband from a court in Sonora, Mexico. Neither party had ever been in that state. It was held that the divorce was invalid. The same conclusion was reached in Dailey v. Dailey, 145 Wash. 499, where a divorce was granted in the state of Sonora to a resident of Tacoma, Washington.
Counsel representing defendant and defendant’s husband, Louis It. Mattingly, does not dispute the correctness of the foregoing statement of the law. But he contends that this court may recognize the validity of the foreign divorce as a matter of comity; and that the plaintiff herein, Mr. Cover, is estopped from raising the question of the invalidity of the divorce upon which he and defendant relied when they entered into the marriage ceremony.
The question of estoppel was presented by the appellant *223 to the Court of Appeals in Frey v. Frey, 61 App. D. C. 232. The Court refused to apply the doctrine in that case. In a sympathetic opinion the Court discussed the situation of the innocent woman who had married one of the divorced parties in reliance upon its validity, but expressed the view that it was in the interest both of society and of the innocent wife and children to have the true status of the innocent parties judicially declared without delay.
This decision is binding upon this court.
The case is not a proper one for the application of the doctrine of comity.
In Hilton v. Guyot, 169 U. S. 167, the court said—
“A judgment affecting the status of persons, such as a decree confirming or dissolving a marriage is recognized as valid in every country, unless contrary to the policy of its own law.”
The granting by a foreign court of a decree of divorce to residents of this District under the circumstances of this case is contrary to the policy of our law.
In Hanover v. Turner, 14 Mass. 227, 231, the court said—
“If we were to give effect to this decree, we should permit another state to govern our citizens, in direct contravention of our own statutes: and this can be required by no rule of comity.”
See Alzmann v. Maher, 246 NYS, p. 63.
It follows that plaintiff is entitled to a decree declaring void his marriage to the defendant.