MILDRED A. COAKLEY, Petitioner, *v.* FRANK COAKLEY, Respondent.

Domestic Relations Court of City of New York, Family Court Division, New York County, February 10, 1937.

*Simon Klein,* for the petitioner.

*Walter Higgins,* for the respondent.

PANKEN, J. In this proceeding the petitioner asks, pursuant to the provisions of the Domestic Relations Court Act, for maintenance and support from the respondent. She alleges in the petition that she went through a marriage ceremony with the respondent in the town of Elkton, Md., on October 26, 1932.

Respondent concedes that a marriage ceremony such as is alleged and testified to by the petitioner took place. The petitioner and respondent after the marriage ceremony returned to New York

where they were domiciled and where it is alleged the marriage was consummated. They did as a matter of fact live as man and wife upon their return to New York city.

The respondent resists the claim made by the petitioner, asserting that the petitioner was not in a position to enter into a valid marriage contract since she was at the time of the alleged marriage ceremony still the wife of another. It was also claimed by him that at the time of the marriage ceremony in Elkton, Md., he was intoxicated; that he was at that time, pursuant to an order made by a justice of the Supreme Court of the State of New York, on April 28, 1932, declared to be an incompetent; that he was, under said order, adjudged an incompetent and continued to be so on the 26th of October, 1932, and thereafter; that because the petitioner was unable to enter into a valid marriage contract by reason of the fact that she had a living spouse, and because the respondent was an incompetent, the alleged relationship established by the marriage in Elkton, Md., was and is a nullity; and, hence, there is no obligation on the respondent to support the petitioner.

The respondent was not so intoxicated as to prevent him from knowing what he did. Were the petitioner a *feme sole* and the respondent competent to enter a marriage contract, I should find, as a matter of fact, that a valid marriage was consummated.

The petitioner herein admits that up to October 12, 1932, she was the wife of another; that on the said date the marriage relationship then existing was dissolved by a decree of a judge of a court in the city and State of Campechi in the Republic of Mexico and that she was at the time of the marriage ceremony in Elkton, Md., a *feme sole* capable of entering into a valid marriage contract. It was testified to by her that the respondent assisted her in obtaining the divorce from her then spouse. It was he, she testified, who obtained for her the lawyer who represented her in the Republic of Mexico, and that he was active in obtaining an appearance on behalf of her then spouse through a lawyer in the court of the Republic of Mexico.

I excluded testimony which was offered to further show the participation and interest of the respondent in obtaining the alleged divorce for the petitioner. The purpose of that offer of testimony was to support a claim that the respondent was estopped from questioning the validity of the decree of divorce entered in Mexico on behalf of the petitioner because of his participation in its obtainment.

It has been said in the case of *Kay* v. *Kay* (141 Misc. 574) that " Where a marriage is void, it is void from its inception without any decree of the court and for all purposes despite any acts or

intentions of the parties. There can be no such thing as estoppel to bring about the validity of the marriage if it is denied in its inception."

The Domestic Relations Court of the City of New York has the power to inquire into the validity of a divorce decree and determine as to whether or not a decree entered in a foreign jurisdiction without the foreign State's obtaining jurisdiction of the persons has in law dissolved the marriage; likewise, the Domestic Relations Court of the City of New York has the power to pass upon the validity of a marriage contract incident to the duties imposed upon it by statute. No allowance can be made for the support and maintenance of a spouse unless a relationship based on a valid marriage is established.

A decree of divorce entered by a court without having jurisdiction of the persons is a nullity no matter how and who participated in obtaining same. On the other hand, a decree of divorce entered by a court of competent jurisdiction and actually obtaining jurisdiction over the persons and the subject-matter is valid.

The petitioner contends that the marriage contract entered into in Elkton, Md., was valid. I am referred to section 4 of article 62 of the Code of the Public General Laws of the State of Maryland in effect in 1932. That section refers to the persons authorized to solemnize marriages in that State. The question before me is not whether the person who performed the marriage ceremony was so authorized to do under the laws of the State of Maryland. We are concerned here with the question as to the ability of the petitioner to enter into a valid marriage contract.

Under section 5 of article 62 of the Maryland Code, the clerk issuing marriage licenses is required to inquire as to whether or not either of the parties were divorced and section 8 of the same article says, " If in the course of the examination of any applicant for a marriage license it shall appear to the clerk of the court that any legal impediment exists under the laws of this State why the said parties shall not be joined in marriage, he shall withhold said license unless ordered by the court of which he is clerk to issue the same."

There is no testimony before me as to whether or not the prerequisites as laid down in the Maryland Code have been complied with. It is, however, of no moment since the laws of the State of New York govern as to the rights of the parties herein.

The decree of divorce upon which the petitioner relies recites that both parties were represented by counsel. The decree has this interesting paragraph: " Thereupon said Judge did all within his power to reconcile the spouses to each other, as is provided by law,

but both parties stood firm to their determined purpose of securing a divorce each from the other for the reasons already stated in the petition."

The evidence in the case shows that neither the plaintiff nor the defendant in the divorce action in Mexico were in the Mexican court nor that they had gone into Mexico to establish even a pretended residence there. The decree also recites that the basis for the application for divorce was " incompatibility of temperament and mutual consent."

In the case of *Kerr* v. *Kerr* (41 N. Y. 272) it is said: " The unverified complaint asserts that the plaintiff therein, Richard Kerr, was then, July 20th, 1866, and for more than a year then last past had been a *bona fide* citizen of the State of Indiana, and a resident of Floyd county. The laws of the State of Indiana require the petitioner, or plaintiff, to have been a *bona fide* resident of the State for one year previous to filing his bill for a divorce. The proof was ample to show, and did show, that from 1862, up to the time of her death in 1867, the said intestate was a citizen and resident of the State of New York; and hence the court in Indiana had no jurisdiction to entertain proceedings in his favor for a divorce against his wife, then a resident of this State."

In *Kerr* v. *Kerr* (*supra*) it is also said: " A foreign judgment could not be inquired into collaterally, or impeached by parol evidence. But the judgment of a court of a sister State has no binding effect in this State, unless the court had jurisdiction of the subject matter, and of the persons of the parties."

In the case before me the direct evidence discloses that the residence of the petitioner as well as of her spouse, the one mentioned in the decree hereinabove referred to, was in the State of New York. The Mexican court had no jurisdiction of the persons in the proceeding before it.

It was said in the case of *Lefferts* v. *Lefferts* (263 N. Y. 131): " Before going to Nevada, Mrs. Oppenheimer had become acquainted, in New York with a Dr. Lefferts. He had advised her about going west and wrote her while she was in Reno. At one time she stated that he had advised her to get a divorce in Reno. Subsequently, in 1917, she married Dr. Lefferts in Indiana."

In the same case of *Lefferts* v. *Lefferts* (*supra*) it appeared that Mrs. Oppenheimer actually resided in Nevada for a considerable period of time and voted in an election in that State. The court said: " The suggestion having been made to the plaintiff that she go to Reno to get a divorce, the fact that, within a month after obtaining her decree, she returned to her mother in Brooklyn, together with the additional fact that, within a month after that,

she made an affidavit stating that she was a resident of Brooklyn, sustains the inference drawn by the Appellate Division that the wife went to Nevada with no intention of making it her permanent abode or changing her domicile."

The *Lefferts* case is similar to the case before me except that in the *Lefferts* case the spouse, Mr. Oppenheimer, did not appear in the Nevada court. Dr. Lefferts in that case did what the respondent in this case is alleged to have done. He advised Mrs. Oppenheimer to go west to obtain a divorce and then he married her in a foreign jurisdiction, to wit, in the State of Indiana, as did the respondent herein participate in the arrangements for the divorce and then married the petitioner in a foreign State, to wit, the State of Maryland; and, as in the *Lefferts* case, neither the petitioner nor the respondent were residents of the foreign State where they were married; and as in that case, the petitioner and respondent lived together as husband and wife in the State of New York. The court has held in *Lefferts* v. *Lefferts* (*supra*) that Dr. and Mrs. Lefferts, the parties to the action, were not legally man and wife.

A decree of divorce which is a nullity cannot be made valid by way of estopping a party because of his acts in an attack on its validity.

In the case of *Alzmann* v. *Maher* (231 App. Div. 139) a city clerk was sustained in his refusal to issue a marriage license where it appeared that the applicant for such license had obtained a void Mexican divorce. The court said: " Notwithstanding the presentation of the formal document issued by one of the States of Mexico, the facts disclose that the petitioner continued not only his residence but his domicile in New York. He does not claim to have even visited Mexico during the period. Papers were forwarded by him and by his wife to lawyers who put through the proceeding. Petitioner claims that under the laws of Mexico residence is not necessary."

The facts in *Alzmann* v. *Maher* (*supra*), in so far as the method in which the decree of divorce was obtained in Mexico, are exactly like those in the case before me.

Neither the Republic of Mexico nor any State in that Republic ever obtained jurisdiction of the parties or the subject-matter. Neither the persons were in nor was the *res* laid in any of the States in the Republic of Mexico. The petitioner and her spouse were residents of the State of New York and they were subject to all of the laws of this State.

In the case of *Baumann* v. *Baumann* (250 N. Y. 382) the Court of Appeals passed upon the validity of divorces obtained in Mexico by New York citizens. The court said: " In 1924 the defendant

Charles Ludwig Baumann went to the State of Yucatan, Mexico, and procured a document from the Director General of the Civic Register of the State of Yucatan, which purported to grant him a divorce from the plaintiff, which divorce the declaratory judgment has adjudged to be void. On June 28th, 1926, the defendants went, through a marriage ceremony in the State of Connecticut, before a justice of the peace. The judgment herein declares said marriage to be null and void. Immediately after said ceremony the defendants returned to New York city, where they have since lived as husband and wife, * * * represented to the public that the defendant Ray Starr Einstein was Mrs. Charles Ludwig Baumann, * * * and also represented to the public that Charles Ludwig Baumann was no longer the husband of the plaintiff, and that he had secured a divorce from her in Yucatan." And at another point the court said: " The acts of the defendants [referring to Charles Ludwig Baumann and Ray Starr Einstein, my reference] cannot affect the matrimonial status of the plaintiff [referring to the lawful wife of Charles Ludwig Baumann, my reference]."

In the *Baumann* case the spouse had actually gone to the State of Yucatan, Mexico, and while there obtained the alleged decree of divorce. In the case before me the petitioner never went to Mexico. As in the *Baumann* case, so in the case before me, the decree of divorce obtained in Mexico on October 12, 1932, is null and void and the alleged marriage is equally without force.

In the case of *Fischer* v. *Fischer* (254 N. Y. 463) the Court of Appeals held that a divorce obtained by New York residents who temporarily lived in another jurisdiction to give some colorable right to maintain an action is a nullity.

I am referred by the petitioner to the case of *Hubbard* v. *Hubbard* (228 N. Y. 81). This case is entirely different from the case before me. The marriage in that case was valid under the laws of the State of Massachusetts. The wife in the *Hubbard* case had obtained her decree of divorce in the State of Massachusetts. Neither the wife nor the husband in the *Hubbard* case had at any time resided in New York State. That is not the fact in this case. Both parties at the time the decree of divorce was entered were residents of the State of New York. Besides that, as Judge O'BRIEN said in the case of *Fischer* v. *Fischer* (*supra*): " The State of New York was not a party to any of the marital transactions of those parties and we held that the public policy of this State does not require the establishment of a forum for the resort of parties to a marriage which is valid in the State where they were domiciled when it was performed."

Section 1 of article 4 of the Constitution of the United States reads: " Full faith and credit shall be given in each State to the public acts, records, and judicial proceedings of every other State."

This provision of the Constitution has been construed by the United States Supreme Court as not in conflict with the law of the State of New York.

Full faith and credit, under the Constitution, can only be given to the judicial decrees of other States if jurisdiction is first obtained over the parties and the subject-matter and where no fraud has been practiced.

The Mexican court, having obtained no jurisdiction of the cause and of the parties, was not in a position to enter a decree valid and binding. The marriage ceremony performed in Elkton, Md., could not clothe a nullity with validity.

Under the laws of the State of New York, adultery is the ground upon which an absolute divorce may be had by one spouse against the other. In the case before me the ground upon which the divorce was sought and entered was " incompatibility of temperament and mutual consent."

The validity of a divorce depends upon the status of the person asserting it.

The Mexican divorce being a nullity, the petitioner is still the wife of the spouse from whom she allegedly was divorced by that decree.

The state of the marriage and divorce laws throughout the several States of the Union very often brings injustices. Not infrequently are these injustices visited upon innocents. Because of the diversity in the laws of the several States, a child may be legitimate in one State and regarded illegitimate in another. The rights of such a child are often jeopardized.

There is undoubted need for uniformity in marriage and divorce laws, at least as to the several States of the Union. That need is not hard to meet. It is certainly less so than the hardships which are visited upon persons who are ignorant of the law and whose ignorance is excusable. It is too much to expect of a person to know the divorce and marriage laws of every State of the Union. Certainly the unborn child cannot know the law. It is an innocent victim of the lack of uniformity.

It would be much better were it possible to make marriage and divorce laws universal. Attempts are being made to make laws affecting labor universal. Other attempts are made to make laws universal affecting the traffic in narcotics. The relationship which is the result of ·marriage and sometimes of divorce is of infinite importance not only to those who are parties to the marriage con-

tract but to society as a whole. The family is the basic unit upon which civilization rests.

Having concluded that the petitioner had no capacity to enter into the marriage contract, it is not necessary for me to inquire as to whether or not the respondent, because of his having been judicially declared an incompetent, had capacity to enter into a valid marriage contract in Elkton, Md. An insane person cannot enter into a valid contract. Whether the incompetence of this respondent was such as to warrant a finding that he was insane, it seems to me, is not supported by the testimony in the case. There was proof before me that while he was subject to a committee of his person, because of incompetence, appointed by a justice of the Supreme Court, he was, during his incompetence, receiving $1,000 a month as a " contact man " for a large corporation. It is difficult to reconcile insanity or incompetence with an ability to earn $1,000 a month as a representative of a large corporation.

Petition dismissed.