JACOB L. RISK, Plaintiff, *v.* MIRIAM P. RISK, Defendant.

Supreme Court, Special Term, Kings County, November 2, 1938.

*Lester A. Kent* [*Myron P. Gordon* of counsel], for the plaintiff.
*Irving Levine*, for the defendant.

KADIEN, J. This is an action by the plaintiff husband to annul his marriage to the defendant upon the ground that at the time of contracting same, the latter had a husband living, from whom she had not been divorced. There is no issue of either marriage.

The defendant denies that she had another husband when she married plaintiff. She asserts, however, by way of an affirmative defense, that she had been married to one Lee Schnur in the city of New York, but that on May 7, 1934, the Second General Court of the First Instance of the First Judicial District of the State of Morelos, Republic of Mexico, rendered a judgment in her favor, dissolving this marriage upon the ground of incompatibility of character, as provided by the laws of said State.

She avers that " through her lawfully constituted and duly appointed attorney in the State of Morelos, Republic of Mexico, the defendant expressly submitted herself to the jurisdiction of the courts of the said State; " and that the said former husband " through his lawfully constituted and duly appointed attorney in the State of Morelos, Republic of Mexico, expressly submitted himself to the jurisdiction of the courts of the State of Morelos."

Her second affirmative defense alleges that on numerous occasions during 1933 and the early part of 1934, while she was separated from her first husband, the plaintiff urged, advised and counseled her to institute a divorce proceeding; he informed her that she could not obtain a divorce in this State, but she could obtain one under the laws of Mexico, and represented that such a divorce would be valid, and that he would marry her and never question its legality; in reliance upon these representations, the defendant instituted the proceeding described in her first defense, and obtained a decree in Mexico dissolving her marriage to Schnur, all the expenses incidental thereto being paid by the plaintiff; that after the decree was granted, and on May 15, 1934, he represented to her that they would have difficulty in obtaining a license within the State of New York, and that they should both go to the city of Greenwich, Conn., for the purpose of being married; that they went to that city, where they were married on said day; that thereafter the parties maintained their own home in the borough of Brooklyn, city of New York, living together as husband and wife, until the 1st of May, 1937; and that by reason of the foregoing the plaintiff is estopped from denying the validity of the decree of divorce obtained by the defendant.

As a counterclaim, the defendant seeks a decree of separation from the plaintiff, alleging cruel and inhuman treatment, abandonment and non-support. The reply interposed by the plaintiff denies only the latter allegations, and again affirmatively pleads

the invalidity of the marriage by reason of another marriage existing at the time, between the defendant and Lee Schnur.

It is settled law that a marriage to a person who has a spouse living and is undivorced, is void *ab initio*, rather than voidable. (*Matter of Renzo* v. *Reid Ice Cream Corp.*, 254 App. Div. 794; Dom. Rel. Law, § 6, subd. 1.)

Concededly, the defendant's husband Schnur was alive when she married the plaintiff. The essential question, therefore, is whether the alleged divorce decree obtained in Mexico is valid.

The Appellate Division, Second Department, has held in *Matter of Alzmann* v. *Maher* (231 App. Div. 139) that a married resident of this State may not institute a divorce action in a foreign country " by sending a petition to an attorney in that country and give to the court jurisdiction by having the defendant file a notice of appearance in the action and thus obtain a divorce upon a ground not recognized in this State."

That is exactly what happened in the instant case. Both the defendant and her husband Schnur executed powers of attorney to third parties in Mexico. Neither of them ever resided, established a residence or domicile in Mexico or any of its States, either prior to or during the proceeding which resulted in the alleged decree. In effect the Schnurs agreed to confer jurisdiction upon a court in a foreign country upon whose soil they never sat foot, much less established a domicile, in order to obtain a divorce upon grounds not recognized in their marital domicile — the State of New York.

Marriage is not merely a civil contract. It is a status to which the State is a third party. (*Svenson* v. *Svenson*, 178 N. Y. 54.) It is in New York State that the defendant and her husband Schnur were married and lived as man and wife. There is no evidence that any other domicile was ever established, in Mexico or elsewhere. The answer itself asserts that they procured a divorce merely through powers of attorney. Their marital domicile continued, then, in the State of New York, and was subject to its laws. The Mexican courts had no jurisdiction over the parties. " Therefore, in procuring the Mexican decree of divorce, they violated the law, procedure, and public policy of this State, and the decree of divorce they thus obtained is invalid." (*Matter of Alzmann* v. *Maher*, *supra*, at p. 141.)

The courts of this State may inquire into the validity of a judgment thus obtained in a foreign State as to jurisdiction. (*Andrews* v. *Andrews*, 188 U. S. 14; *Hunt* v. *Hunt*, 72 N. Y. 217; *Haddock* v. *Haddock*, 201 U. S. 562.)

The defendant, not validly divorced from her husband Lee Schnur, was, in my opinion, incapable of entering into a marriage contract with the plaintiff. The invalid Mexican decree was not and could not thereby be rendered valid.

The sole question remaining is whether, if true, the facts pleaded in the defendant's second defense by way of estoppel bar the plaintiff from securing the relief he asks in this action.

The defendant contends that since plaintiff urged, counseled or induced her to procure the Mexican decree of divorce, he is estopped from denying the validity thereof, and hence is not entitled as matter of absolute right to a decree of nullity. Numerous decisions have been cited to support this contention, among which *Starbuck* v. *Starbuck* (173 N. Y. 503); *Hubbard* v. *Hubbard* (228 id. 81), and *Brown* v. *Brown* (242 App. Div. 33; affd., 266 N. Y. 532) are the leading cases.

In *Starbuck* v. *Starbuck* (*supra*) the purpose of the action was to recover dower in real estate, of which the plaintiff's first husband had died seized. It was held that the divorce which the plaintiff wife had obtained in another State which had no jurisdiction over her husband, " operated to defeat her claim that she is now the widow of the decedent and entitled to dower in the real estate acquired by him after the decree."

In *Hubbard* v. *Hubbard* (*supra*) the plaintiff claimed that the decree divorcing the defendant from a former husband was invalid, and he demanded an annulment of his subsequent marriage to the defendant, who, at the time of her divorce, was a resident of the State of Massachusetts. She had instituted an action against her then husband, who was in New York. The Massachusetts court ordered constructive service of process upon her husband in New York. He defaulted and a decree was granted. It appears that neither had at any time resided in New York, and that the husband was not living when the annulment action by Hubbard was begun. The court held, as said in *Fischer* v. *Fischer* (254 N. Y. 463, 467): " The State of New York was not a party to any of the marital transactions of those parties and we held that the public policy of this State does not require the establishment of a forum for the resort of parties to a marriage which is valid in the State where they were domiciled when it was performed."

In *Brown* v. *Brown* (*supra*) the plaintiff's action was based upon a contract dependent upon whether a marriage existed between the parties. In that case it was alleged that the parties were husband and wife; that the defendant abandoned the plaintiff and refused to support her; judgment was demanded for moneys expended by the plaintiff for her separate support from the time of the aban-

donment to the commencement of the action. The defendant attempted to impeach, for lack of jurisdiction, a decree of divorce which he had obtained in the courts of a sister State, claiming that because his former wife was living, he was entirely incapable of entering into a valid marriage with the plaintiff. The court held that the plaintiff was entitled to judgment, stating that " a party may not be heard to impeach a decree or judgment which he himself has procured to be entered in his own favor."

Clearly, the facts in the instant case are distinguishable from those in the cases last cited. Here we have *directly* involved *the marital status* of the parties (*Stevens* v. *Stevens*, 273 N. Y. 157, 159), and not the pecuniary considerations which were presented in the *Starbuck* and the *Brown* cases. Here, contrary to the situation present in the *Hubbard* case, New York State, as the marital domicile, *was a party* to " the marital transactions " of both the plaintiff and the defendant herein, and the defendant and her former husband, Lee Schnur. Here, unlike the *Brown* case, the plaintiff, against whom the claim of estoppel is asserted, was not a party or participant in the proceeding sought to be impeached. The decree thereby obtained was not " entered in his own favor."

This, in my opinion, is not a case in which the doctrine of estoppel may be invoked. " A decree of divorce which is a nullity, cannot be made valid by way of estopping a party because of his acts in an attack on its validity." (*Coakley* v. *Coakley*, 161 Misc. 867, at p. 871). That decree, being invalid as against the public policy of this State (*Matter of Alzmann* v. *Maher, supra; May* v. *May*, 251 App. Div. 63), the defendant was incapable of remarrying; her marriage to the plaintiff, therefore, is absolutely void (Dom. Rel. Law, § 6, subd. 1), and the plaintiff's conduct in inducing or counseling such divorce, though blameworthy, cannot validate it.

As said in *Simmons* v. *Simmons* (19 F. [2d] 690, 691): " In proceedings to annul a void marriage, especially where it is so declared by statute, the rule of *pari delicto* and the equitable principle of ' clean hands' are inapplicable, since in such cases the State becomes a third party. While it is a settled principle of law that, where parties are *in pari delicto*, the court will refuse to extend them aid, and will leave them without remedy against each other, it is equally true that, where the State is an interested party, *the contributing guilt of the parties to the suit will not operate as a bar to the granting of relief.* ' The rule of *pari delicto* will not be applied, however, to prevent relief in a suit to annul and set aside a void marriage. This is a matter in which the State is an interested party.' " (Italics mine.)

In *Lefferts* v. *Lefferts* (238 App. Div. 37; affd., 263 N. Y. 131) a similar claim of estoppel was before the court. There, Mrs. Oppenheimer was advised by Dr. Lefferts to obtain a divorce in Nevada, and upon her so doing he married her in another State. Mr. Oppenheimer, the first husband, made no appearance. Thereafter Mrs. Lefferts brought an action against Dr. Lefferts for a separation. The Appellate Division dismissed the complaint upon the ground that the marriage was not valid, since the divorce which the plaintiff had obtained from Oppenheimer was not recognized in New York. Said the court (at p. 38): " While the conduct of defendant in entering this plea is to be regarded as thoroughly reprehensible, nevertheless the declared public policy of this State requires that the court may not grant potency to the decree of the Nevada court, which was without jurisdiction over the parties, and thereby put the stamp of its approval upon the resort by individuals domiciled in this State to a foreign forum, there to destroy a status which must be governed by the laws of their domicile." In affirming, the Court of Appeals (at pp. 134, 135) held that the Appellate Division was correct in " holding the decree of divorce ineffectual to dissolve the Oppenheimer marriage, and that, therefore, Dr. and Mrs. Lefferts, the parties to this action, were not legally man and wife."

Under all these circumstances, then, both upon reason and upon authority, I am constrained to hold that the marriage between the plaintiff and the defendant is void *ab initio;* that plaintiff is entitled to a decree of annulment and to a dismissal of the defendant's counterclaim for a separation. Settle findings and judgment on two days' notice.