120 So.2d 176 (1959)
John ASTOR, Petitioner,
v.
Dolores Fullman ASTOR, Respondent.
Supreme Court of Florida.
April 7, 1959.
Adhered to on Rehearing April 14, 1960.
On Rehearing May 3, 1960.
W.F. Parker, Charles M. Moon, and Redfearn, Ferrell & Simon, Miami, for petitioner.
Scott, McCarthy, Preston, Steel & Gilleland and William C. Steel, Miami, for respondent.
Certiorari denied without opinion.
On Petition for Rehearing.
PER CURIAM.
A rehearing having been granted in this cause and the case having been further considered upon the record and briefs and oral argument of the attorneys for the respective parties; it is, therefore, ordered and adjudged by the Court that the order entered by this Court in the cause on April 7, 1959, denying petition for certiorari, Fla.App., 107 So.2d 201, be and is hereby reaffirmed and adhered to on rehearing.
THOMAS, C.J., and TERRELL, HOBSON, ROBERTS and THORNAL, JJ., concur.
DREW and O'CONNELL, JJ., dissent.
O'CONNELL, Justice (dissenting).
Petitioner, John Astor, petitioned this Court for writ of certiorari to review that decision of the District Court of Appeal, Third District, reported in 107 So.2d 201. We denied the petition, whereupon petitioner filed a petition for rehearing which was granted, and argument of the parties heard on rehearing.
Thereafter on April 14, 1960 a majority of this Court concurred in an order reaffirming and adhering to the order denying the petition as previously entered. It was intended that the order denying the petition on rehearing would include provision that any member of this Court could file an opinion expressing his views on the order, but as drawn by the Clerk this provision was inadvertently omitted therefrom.
Nevertheless, inasmuch as I voted to grant the petition for certiorari on rehearing, I wish to express my reason for doing so through this opinion.
The facts involved in this cause are set forth sufficiently in the opinion of the district court and I will not repeat them here.
The first point to be determined is whether this Court has jurisdiction to consider the district court's decision by writ of certiorari.
Astor contends that this Court has jurisdiction because the subject decision of the district court is in direct conflict with the decisions of this Court rendered in Kuehmsted v. Turnwall, 1932, 103 Fla. 1180, 138 So. 775, and Jones v. Jones, 1935, 119 Fla. 824, 161 So. 836, 104 A.L.R. 1.
The respondent, Dolores Astor, hereinafter referred to as Dolores, replies with the contention that the Kuehmsted and Jones cases were based on different factual situations than found in this case and under the announced principle in Ansin v. Thurston, Fla. 1958, 101 So.2d 808, and like cases, cannot be the basis for a direct conflict with the subject district court's decision.
In the Kuehmsted case, 138 So. at page 777, this Court adopted the following doctrine, which it quoted from 18 R.C.L. 446:
"Under ordinary circumstances the effect of a void marriage so far as concerns the conferring of legal rights upon the parties, is as though no marriage had ever taken place, and therefore being good for no legal purpose, its invalidity *177 can be maintained in any proceeding in which the fact of marriage may be material, either direct or collateral in any civil court between any parties at any time, whether before or after the death of either or both the husband and wife, and upon mere proof of the facts rendering such marriage void, it will be disregarded or treated as nonexistent by the court." (Emphasis added.)
In Jones v. Jones, 161 So. at page 839, supra, this Court said:
"The marriage of a man and woman, where one of them has a husband or wife by a prior marriage, who is then living and undivorced, is generally held to be absolutely void, and not merely voidable, and, being a nullity, no judicial decree is ordinarily necessary to avoid same. * * *"
As I understand his position, Astor contends that these two statements of law provide the conflict between the decision of the district court and the decisions in those cases.
Respondent, in her reply brief, correctly calls the attention of this Court to the fact that the district court's decision did not decide whether the marriage between these parties was void or voidable. It seems to me that the possibility of conflict with the Jones case is therefore eliminated.
After reciting that Astor had instituted the instant suit seeking to have set aside the final decree, dated April 1, 1955, which granted Dolores alimony unconnected with cause for divorce, and seeking to have the marriage between Astor and Dolores annulled, the district court said at 107 So.2d at page 203:
"The determinative question is whether the later New York decree invalidating Astor's Mexican divorce, entered in a suit by Gertrude against Astor to which Dolores was not a party, compelled the chancellor in the instant case to vacate the earlier Florida separate maintenance decree. * * *"
The Court then answered the question saying:
"* * * We must answer that question in the negative. This is so because the Florida decree, which, in effect, held that Astor was estopped to use the invalidity of his Mexican divorce as a shield against Dolores' claim for separate maintenance or as a sword to terminate his obligation for her support and denying Astor's counterclaim for annulment on the same basis, continues binding on him, and is res judicata as to these parties. [Authorities cited.] The estoppel imposed on Astor by the Florida decree was broad enough to cover any and all methods by which Astor might have sought to prove or establish the invalidity of the Mexican divorce, and it is sufficient, as implemented by res judicata, to cover the effort in the instant case to establish the invalidity of the Mexican divorce by showing the New York decree so holding, entered in a suit to which Dolores was not a party. * *"
It seems to me that the basic question before the district court was not whether the New York decree would require the chancellor to vacate the separate maintenance decree, but was whether or not Astor was estopped by the judgment rendered in the separate maintenance decree from establishing the invalidity of the Mexican divorce and of his marriage to Dolores. However, I think the answer given by the district court, as I have quoted it above, deals with the question as I have stated it.
In determining what the above quoted portion of the district court held it must be remembered that two courts of competent jurisdiction, the New York court and the Circuit Court, Palm Beach County, Florida, both having jurisdiction of Astor and his first wife Gertrude and of the subject *178 matter, their marital status, had either before or during, but before the conclusion of the trial of the instant suit, determined that the Mexican divorce was invalid and that as of the date of the entry of the decrees of those two courts Astor was still the lawful husband of Gertrude. In each instance the date of those decrees was long after the marriage between Astor and Dolores. While it is true that those courts may not have had power to adjudicate the validity of the marriage between Astor and Dolores, she not being a party to those proceedings, those courts did have jurisdiction to adjudicate the marital status existing between Astor and Gertrude, including the validity of the Mexican divorce which sought to dissolve that relationship.
The New York decree was introduced in evidence and the divorce decree entered by the Circuit Court, Palm Beach County, on October 17, 1957 was offered in evidence, but refused. I think it should have been received. As pointed out by the chancellor in denying its admission, Astor had testified to the entry of the decree but this did not render the document itself surplusage.
The effect of the decrees in the Circuit Court, Palm Beach County, and in the New York court holding the Mexican divorce invalid and Astor to still be the lawful husband of Gertrude, and particularly the Palm Beach County Circuit Court's decree which held Astor to have been Gertrude's lawful husband "at all intervening times", is that Astor had a living undivorced wife, i.e. Gertrude, at the time Dolores and Astor sought to undertake marriage on August 6, 1954. It follows as a legal proposition that the purported marriage between Dolores and Astor is void, not voidable. Jones v. Jones, supra. Ponder v. Graham, infra.
The effect of the district court's opinion, in view of the facts and circumstances here involved, must be said to be that a party to a void marriage may be estopped to assert its invalidity by operation of the doctrine of res judicata.
I think this holding is in direct conflict with the principle of law stated in the Kuehmsted case and particularly with that portion of the statement quoted therefrom which holds that the invalidity of a void marriage "* * * can be maintained in any proceeding in which the fact of marriage may be material, either direct or collateral in any civil court between any parties at any time."
While not cited by the petitioner in support of his position I have found another case which is in conflict with the pertinent question of law announced in the district court's opinion. It is the early case of Ponder v. Graham, 1851, 4 Fla. 23.
In the Ponder case on page 30, this Court, after distinguishing between void and voidable marriages, said:
"* * * But where any civil disability, as prior marriage, exists, the marriage is void absolutely, and no civil rights can be acquired under it; and it may be inquired of in any court where rights are asserted under it, though the parties be dead * * *
"Where any civil disability exists, the judgment of the court is but declaratory; it does not make it void; for though a marriage de facto, it had no legal existence. It is competent for a party to set up the nullity of his first marriage, in bar of a sentence praying the nullity of the second marriage. [Citation] Either of the parties to a marriage, or the parent or guardian of either of the parties, or any other person interested, may apply to the court, and they have a right to a declaratory sentence, and it is upon the ground that the public, as well as the parties in interest, have a right to know the real character of these domestic relations. * * *" (Emphasis added.)
I point out here that while the district court held Astor to be barred from adjudicating in this suit the invalidity of the Mexican divorce because the decree in the *179 separate maintenance suit was res judicata on that issue, actually if Astor is so barred it is by operation of the doctrine of estoppel by judgment, not res judicata. The causes of action in this suit and that one are not the same. See Gordon v. Gordon, Fla. 1952, 59 So.2d 40, page 44, where the difference in the doctrine of res judicata and estoppel by judgment is explained. However, in this instance it matters not which doctrine is applied since the doctrines would both operate alike on the question in issue, i.e. whether Astor is now barred from contending that his marriage to Dolores is void because of the invalidity of the Mexican divorce.
Before proceeding further I think it wise to point out that the statement by the district court to the effect that the chancellor in the separate maintenance suit denied Astor's counterclaim for annulment because he was estopped to assert the invalidity of the Mexican divorce appears to be incorrect. As shown by that portion of that final decree set forth in the footnote to the district court's opinion, 107 So.2d at page 203, the chancellor dismissed the counterclaim on jurisdictional grounds, i.e. "for the reason that it has not been proved, by a preponderance of evidence, that he is a bona fide resident of the State of Florida." Astor therefore did not have an adjudication, on the merits, of the validity of his marriage or of his right to annul the marriage on the ground of the invalidity of the Mexican divorce in that counterclaim. This being the case the doctrine of estoppel by judgment or res judicata would not operate to bar litigation on a subsequent suit involving the cause of action or issues raised in the counterclaim.
Before turning to the merits of the controversy, it must be determined whether or not the doctrine of estoppel by judgment otherwise applies in this case so as to bar Astor from showing that his marriage to Dolores was and is void because the Mexican divorce did not effect a valid dissolution of his marriage to Gertrude, his then wife.
The doctrine of estoppel by judgment, like that of res judicata, is an important expression of public policy. It is well grounded in reason, logic and practical considerations. Its ultimate purpose is to bring an end to litigation of issues so that the courts and the parties will not be troubled by interminable litigation and relitigation of the same issue or issues. While it is the theory and practice of our judicial system to guarantee every litigant a full and fair trial of each issue available to him, he is entitled to only one full and fair adjudication thereof.
In the separate maintenance suit, Astor, in his answer to Dolores' complaint for alimony unconnected with divorce, pleaded as a defense that the Mexican divorce was invalid and that consequently his marriage to Dolores was void. It must be assumed that Astor's right to assert this defense was litigated in that suit for the chancellor held that he was estopped by his conduct to do so.
It cannot be denied then that the question of whether Astor was estopped to establish the invalidity of Mexican divorce was adjudicated and that, if it applies, the doctrine of estoppel by judgment will bar his again litigating his right to establish the invalidity of the Mexican divorce.
I recognize that the separate maintenance decree did not specifically hold that Astor was estopped to assert the invalidity of his marriage to Dolores because of his having a living undivorced wife, but I think that, under the facts of this case, the ruling amounts to just that.
The question for decision narrows then to whether the doctrine of estoppel by judgment will be applied in such cases so as to defeat the right of a party, who has not in fact had an adjudication thereof, to have determined his status under a purported marriage.
I think that it should not.
*180 As above mentioned the doctrine of estoppel by judgment serves a valid public purpose.
Yet when applied so as to defeat the determination of the marital status of members of our society, it runs afoul of another public policy which I feel is of greater importance. This is the right of the public, as well as the parties in interest, "to know the real character of these domestic relations." Ponder v. Graham, supra.
All authorities which deal with the question recognize that the marital status and the marriage contract, although personal to the parties thereto, is, nevertheless, a public institution in which society is deeply interested. It is upon this premise that the state is allowed to interfere with the personal rights of the individual and to regulate both the act of marriage and its dissolution. It is upon the same grounds that the public, the state, is concerned with a determination of the true marital status of the parties when the status is clouded with doubt and uncertainty.
In 1 Greenleaf on Evidence, § 525 (16th ed. 1899), it is stated that the public's interest in such matters calls for an exception to the rule that parties should be bound by their judgments,
"* * * it being essential to the peace of society that questions of this kind should not be left doubtful, but that the domestic and social relations of every member of the community should be clearly defined and conclusively settled and at rest."
In this case if the doctrine of estoppel by judgment is applied here then that public policy which requires that the marital status be settled and set at rest is denied satisfaction. Further, those statements of the law in the Kuehmsted and Ponder cases will have to be ignored or distinguished. I have been unable to distinguish them and I do not believe this Court can ignore them.
I think it far more important to satisfy the interest which the public has in eliminating doubt surrounding the marital status of the parties here involved, than it is to accomplish the somewhat less important purpose of putting an end to litigation concerning the validity of their marriage by denying Astor the right to assert the invalidity of the marriage.
In the instant case the inconsistency which results from a holding that Astor cannot establish the invalidity of his marriage, when the result of two decrees of courts of competent jurisdiction lead inescapably to that conclusion, cannot be either explained or defended unless it be defended on the ground that Astor should be penalized because of his actions in bringing about the situation from which he now seeks release.
If only the personal rights of Astor and Dolores were involved here and their status did not touch the public interest, this Court might be justified in concluding that he should be penalized by denying him relief and leaving him as the court found him. But since his status does involve the public conscience and interest it is of greater importance to settle his marital status than it is to punish him as a wrongdoer.
I recognize that where a marriage is void in its inception no judicial decree is necessary to render it so. The decree of the court in such a case is merely declaratory. But as this Court said in Young v. Young, Fla. 1957, 97 So.2d 470, 471, it is nevertheless "to the best interests and good order of society that the invalidity of the marriage be adjudicated by a court of competent jurisdiction."
I conclude that under the facts and circumstances of this case the doctrine of estoppel by judgment is not applicable so as to bar Astor's and the public's right to an adjudication of the validity of his marriage to Dolores.
I point out that this does not mean that I construe the Kuehmsted and Ponder cases, or the principles of law quoted therefrom, to mean that a husband or wife is *181 entitled to more than one adjudication of the validity of a marriage for I do not so construe them or so urge in this opinion. Rather what I contend is that a party to a marriage is entitled to have the validity of the marriage adjudicated, on the merits, or to at least have the opportunity to adjudicate it and waive the right, and that the doctrine of estoppel by judgment cannot be used to deny him the right where he attempted to obtain an adjudication thereof but was denied the right to do so in a prior proceeding.
Had the chancellor adjudicated the validity of Astor's marriage on the merits in the separate maintenance suit, or had Astor had the opportunity to assert the issue and not done so, I would agree that he is barred from raising it again in the instant suit.
I come then to the instant suit and a determination of whether Astor's prayer for annulment should be granted.
I think it should.
As above mentioned the decrees of both the New York court and the Circuit Court of Palm Beach County held the Mexican divorce to be void and that Astor was still the lawful husband of Gertrude as a result of a valid marriage contracted between them on September 18, 1944.
While it is true that Dolores was not a party to either of these actions this in no wise detracts from the fact that those decrees settled the invalidity of the Mexican divorce and its effect on the marital status of Astor and Gertrude, not only as between Astor and Gertrude but for all that part of the world which recognizes the decrees of courts of competent jurisdiction of this country. Those decrees clearly determined that as of the time Astor and Dolores attempted to marry in August 1954, Astor was not capable of contracting that marriage because he had a living undivorced wife. His marriage to Dolores was therefore void. Jones v. Jones, supra. The provisions of § 65.05, F.S.A. also make it clear that such a marriage is void. The circumstances present in this case entitle Astor to a decree of annulment under § 65.04(9), F.S.A., unless it can be said that he is estopped from asserting the invalidity of the Mexican divorce by virtue of his conduct in procuring it and relying upon it, as the chancellor in Dolores' suit for alimony unconnected with cause for divorce held that he was.
Dolores in her answer in this suit, as she did in her suit for alimony unconnected with cause for divorce, contends that Astor is so estopped from establishing the invalidity of the Mexican divorce. It must therefore next be decided whether Astor in this suit should be held to be estopped to prove the invalidity of the Mexican divorce and the invalidity of his marriage to Dolores.
The authorities are in disagreement on this question.
In some jurisdictions it is held that a person may be estopped to assert the invalidity of a marriage, in circumstances such as found in this case, when the action involves the property rights of the parties, but is not estopped to have a determination of the marital status in such an action.
In Keezer, Marriage & Divorce, § 533, (3rd ed. 1946) it is said:
"Since the state is interested in divorce proceedings, estoppel is generally available to neither party [as a defense to an action for divorce]. However, so far as the parties themselves are concerned, they may be estopped. * * *"
A series of annotations in A.L.R. indicates that there are a number of authorities which follow this view and others which do not. These annotations appear in 109 A.L.R. 1018 (1937), 122 A.L.R. 1321 (1939), 140 A.L.R. 914 (1942), 153 A.L.R. 941 (1944) and 175 A.L.R. 538 (1947). Inasmuch as the cases on each side of the question are set forth in detail therein I will not cite them here.
*182 In addition to the cases which hold that one may not be estopped, by his conduct in bringing about the situation from which he seeks relief, from seeking a determination of the marital status, but may be estopped insofar as private property rights between the patries are concerned, there are respectable authorities which hold that the doctrine of estoppel, i.e. unclean hands and pari delicto, should not be applied when the relief sought is the determination and adjudication of the invalidity of a void marriage. See the statements and cases cited in 19 Am.Jur., Equity, § 469; 35 Am. Jur., Marriage, § 155; 55 C.J.S. Marriage § 51; Gress v. Gress, Tex.Civ.App. 1948, 209 S.W.2d 1003, 15 A.L.R. 700; Annotation: 54 A.L.R. 80 (1927) and 15 A.L.R.2d 706.
In most, if not all, the cases which are cited in favor of the rule that one may not be estopped by his conduct to assert the invalidity of his marriage, the basis given for the ruling is that the state is interested in the marriage relation and the rights of the marital relation should not be defeated by the conduct of a party to the alleged marriage. The effect of these cases is that where the state is an interested party the doctrine of equitable estoppel, pari delicto, and unclean hands, is not applicable.
The Tennessee court in Hamm v. Hamm, 1947, 30 Tenn. App. 122, 204 S.W.2d 113, 122, 175 A.L.R. 523, gave as its reason for denying application of equitable estoppel in a similar case that:
"* * * Hence the parties would be set at large, in the midst of a grave uncertainty as to the most important status known to society. Neither would know whether he or she could safely remarry, for in such case in addition to other obvious considerations of importance, any estoppel that would arise would not prevent a state's prosecuting for bigamy or for unlawful cohabitation the party obtaining the invalid divorce. * * *"
A New York court, in Risk v. Risk, 1938, 169 Misc. 287, 7 N.Y.S.2d 418, 423, stated its refusal to permit application of estoppel on the ground that the invalid divorce was void and that the action of one of the parties to the subsequent marriage could not validate it, saying:
"This, in my opinion, is not a case in which the doctrine of estoppel may be invoked. `A decree of divorce which is a nullity cannot be made valid by way of estopping a party because of his acts in an attack on its validity'. Coakley v. Coakley, 161 Misc. 867, at page 871, 293 N.Y.S. 421, at page 426. That decree, being invalid as against the public policy of this State * * *, the defendant was incapable of remarrying; her marriage to the plaintiff, therefore, is absolutely void * * *, and the plaintiff's conduct in inducing or counselling such divorce, though blameworthy, cannot validate it."
In sum the holding of the courts whose decisions I would follow is that where the question at issue is the marital status of the parties, as distinguished from their property rights, nothing that the parties may have done may be held to validate that which the law of this state regards as void, and the actions of the parties may not be held to defeat the interest of the state in determining the true status of the marital relations.
I agree with these holdings and in this case conclude that the conduct of Astor in procuring the Mexican divorce and in marrying Dolores in reliance thereon does not estop him from establishing the invalidity of that divorce or of his marriage to Dolores for the reason that to do so would be to defeat the right of the state to know the marital status of the parties and would be to impart validity to a foreign divorce and to a subsequent marriage both of which are regarded as void and against the public policy by the laws of this state.
I point out here that this Court is not in this case concerned with the matter of *183 property rights growing out of the marriage or children born of the marriage. The right of Dolores to alimony is not a property right arising out of the marriage but is a right given by statute and is controlled by the existence in the first instance of a valid marriage. Querze v. Querze, 1943, 290 N.Y. 13, 47 N.E.2d 423.
I would point out here that even had I concluded that the doctrine of equitable estoppel could be applied against Astor I am of the opinion that in view of the facts of this case in the record before us, including the fact Dolores knew that Astor had a wife who would not grant him a divorce and knew all of the facts surrounding his obtaining the Mexican divorce to the extent that she and her mother were with him in California while he waited for the entry of the Mexican decree, the doctrine of estoppel against estoppel would be applicable, leaving the court free to determine the issue of the validity of the divorce and marriage without regard to the conduct of either party. Florida Land Inv. Co. v. Williams, 1928, 98 Fla. 1258, 116 So. 642. 19 Am.Jur., Estoppel, § 154.
I realize that the effect of my views would be to grant Astor relief which his conduct does not deserve be granted to him. But as I have explained before, I feel that it is of greater importance to promote the public policy and satisfy the interest of the state in the status of the marriage between these parties than it is to punish Astor as a wrongdoer.
As I view it if the state has a valid right to know the true marital status of its citizens, and it is generally agreed that it has, then it has the right to know it in every case and its right to determine the true marital status cannot be barred by the wrongful act of either party to the marriage.
To reason otherwise, it seems to me, results in change by judicial decree of § 65.04(9) F.S.A. from the wording as written in the statute, to-wit:
"That either party had a husband or wife living at the time of the marriage sought to be annulled."
to read:
"That the defendant had a husband or wife living at the time of the marriage sought to be annulled."
It seems clear to me that had the state, acting through the legislature, intended to allow an annulment to be obtained only by action of a party who was free of fault in bringing about the invalid marriage relationship it would have so provided. But it did not do so and we should not do it by decree. To do so thwarts the obvious intent of § 65.04(9) which is to allow either party to bring about the clarification of the marital status of the parties to a marriage void ab initio, without regard to the clean hands or inequitable conduct of the moving party.
Fault has no place, in my view, in determining the validity of a marriage, and in the rendition of a decree declaring the marriage to be or not to be valid, as it does in determining the right of a party to a decree of divorce because of the conduct of the parties.
In an action in annulment the state is concerned only with whether there actually is a marriage, while in the divorce proceedings the state is concerned with whether a marriage shall be dissolved. The fault concept and equitable principles apply to the divorce proceedings, but not to those seeking annulment under § 65.04(9), F.S.A.
I recognize that the facts in this case are unusual. I have, after exhaustive research, been able to find no case in which by decree of a court of competent jurisdiction it was determined, prior to institution of the suit for annulment, that at the time of entry into the marriage sought to be annulled one of the parties had a living undivorced spouse, as is the case here.
*184 I point out here that nowhere in the district court's opinion, or in the final decrees of the trial courts involved, is it stated that a marriage actually exists between John and Dolores. On the contrary in its opinion the district court, referring to a decision of a New York court, points out that the separate maintenance decree rendered on April 1, 1955 does not purport to hold that they are married.
With their marital status in this state of complete indefiniteness, is the public entitled to treat them as married or single; is either free to marry without facing a charge of bigamy; and will Astor's minor daughter, or his heirs, upon his decease be forced to litigate the validity of Dolores' marriage with her? The marital status of members of our society should not in my opinion be left in such a state of indecision but should be conclusively settled and set at rest.
Law, justice, and public policy are intended to and should be synonymous. It is the business of the courts to cause them to meet so as to produce a just result.
In this case I believe the courts have failed to do so.
I would grant Astor an annulment on the record in this cause, which shows that at the time of his marriage to Dolores and until he was divorced by Gertrude in Palm Beach County, Florida on October 17, 1957, he was the lawful husband of Gertrude.
Further, it is my view that upon the entry of the decree of annulment the decree of April 1, 1955, granting Dolores alimony unconnected with divorce, would cease to be effective. As I view it, such an order continues to be effective only until the marital status of the parties is dissolved by divorce, in which instance permanent alimony may be granted, or until it is determined that no marriage ever existed, as I would do here, in which event there would be no marriage to support an award of alimony.
I would affirm the award of attorneys' fees to Dolores' attorneys under Young v. Young, Fla. 1957, 97 So.2d 470.
DREW, J., concurs.