In the Matter of the Estate of JOHN R. BLUM, Deceased.

Surrogate's Court, Erie County, June 4, 1945.

*John Heider* for Nettie B. Dueltgen, widow.

*Harley N. Crosby* and *John J. McInerney* for executor.

VANDERMEULEN, S. Nettie Blum, who is now Nettie Blum Dueltgen, married John R. Blum, the decedent, on February 13, 1942, at Kenmore, N. Y. His first wife died several years before his second marriage. Nettie had been previously married to one Harold A. Stevenson. She left their home in Buffalo on June 15, 1939, and thereafter lived separate from him. About two years later, on May 27, 1941, he sued her for divorce, on the ground of willful desertion, in the Court of Common Pleas in Armstrong County, State of Pennsylvania. That court granted a decree of divorce which stated that both parties thereto were at liberty to marry again. Stevenson also married again.

It is claimed that the decedent lived with Nettie Blum until he died. He left an old will dated October 30, 1930, which bequeathed all his property to his first wife, Madeline, who died several years before his second marriage. This will was duly probated and letters testamentary issued to the executor therein named, Charles W. Knappenberg. The only persons interested in the estate as beneficiaries are Nettie Blum, the alleged widow, and the decedent's only brother, Norbert C. Blum. Nettie filed a notice of election under section 18 of the Decedent Estate Law. The executor of the decedent's will and the decedent's brother have filed a joint amended answer alleging first, that Nettie was not legally married to the decedent and therefore is not his surviving wife and, second, that she abandoned him in his lifetime. The amended answer then asks judgment denying Nettie's right of election. It is obvious that the purpose of the executor and the brother in putting in such an answer is to contest her right to share in the estate. If she is held not to be the widow, then the brother will take the entire estate as the next of kin and sole distributee. This motion is made to strike out the first defense, namely that Nettie was not legally married to the decedent, on the ground that the executor of the decedent's will and the decedent's brother have no standing in court to attack the legality of Nettie's marriage to the decedent.

It appears that cases involving the matter of the right to question the validity of a divorce decree of a foreign sovereignty divide themselves into two categories: those that are strictly marital actions which primarily involve a marital status, and those which are not marital actions but are private suits predicated on a marriage and personal to an individual party. Hence room was found for a consideration of equitable inducements conceived as affecting only the several parties to the litigation. (See *Krause v. Krause*, 282 N. Y. 355.)

The only reason that could be advanced for permitting an attack upon the divorce decree granted by the State of Pennsylvania is that the State of New York has such a paramount interest in every marriage that public policy demands that certain principles be strictly adhered to in every case.

The question of public policy of the State was discussed by Surrogate O'BRIEN in *Matter of Briggs* (138 Misc. 136, affd. 232 App. Div. 666). In that proceeding it was shown that a divorce was granted by the court of another State. Both parties subsequently married. At page 147 Surrogate O'BRIEN wrote: " It is true that the Supreme Court of the United States had held that under such circumstances no State is constrained to give full faith and credit to a decree rendered by a sister State, although any State, in the exercise of comity, *may* give full faith and credit to such a decree (*Haddock* v. *Haddock*, 201 U. S. 562). It is also true that New York, in cases where the parties had their matrimonial domicile here, has adopted a public policy whereby it refuses comity and declines to recognize the validity of such decrees (*Olmstead* v. *Olmstead,* 190 N. Y. 458; affd., 216 U. S. 386; *Winston* v. *Winston,* 165 N. Y. 553; affd., 189 U. S. 506; *People* v. *Baker,* 76 N. Y. 78). *But a reading of these cases shows that such policy was adopted for the benefit of New York citizens who refused to be bound by the foreign decrees.*" (Emphasis supplied.)

The Surrogate later in the opinion stated (p. 148): " It is thus established that the Indiana decree was accepted as valid by both parties to the proceeding in that State. The second marriage of Chatman has been confirmed by the Supreme Court of this State. This, then, is not a case in which to apply our rule of public policy, which was adopted for the protection of citizens of New York who refuse to be bound by a foreign decree (*Kelsey* v. *Kelsey,* 204 App. Div. 116). Of our authority to make exception to the rule there can be no question. As was said in *Hubbard* v. *Hubbard* (228 N. Y. 81, 85): ' Whether or not the operation of a foreign decree of divorce in a given case will contravene

the policy or wrong or injure citizens of the state is exclusively for its courts to determine. They are the final judges of the occasion on which the exercise of comity will or will not make for justice or morality.' "

In the instant matter it is not a matrimonial status in which the real fact of the relationship of the man and woman calls for a declaration in accordance with the public policy of the State. This is in the nature of a private suit predicated on the marriage and personal to the individual parties. The widow is interested in establishing her right of election. The executor and the brother are interested in defeating it. Either party wins or loses a material interest in the real and personal property of the deceased.

In *Matter of Holmes* (291 N. Y. 261) the husband obtained a divorce in a Nevada court from his first wife living in New York State. He remarried in New York State and continued to live there later. His first wife obtained a judgment of divorce against him on the ground that he was living in adultery with the second woman. He did not appear in the action. On the death of his second wife, Frances M. Lawson, one of the next of kin, applied for letters of administration. The husband filed an answer alleging he was entitled to letters of administration and applied for them on the same day. The Surrogate issued letters to Frances M. Lawson. The Appellate Division reversed the lower court (265 App. Div. 1033). The Court of Appeals in sustaining the reversal said at page 269: " Unquestionably in the divorce action in this State the primary issue determined by the court was that the foreign divorce was without effect in this State. The judgment might have been different if the case of *Williams* v. *North Carolina* had been previously decided. Even if we were to assume that under the principles formulated in that case the judgment is erroneous and would have been reversed as matter of course upon appeal, nevertheless the validity of the judgment could not be challenged after it became final and the issues decided therein could not be litigated again between the parties to the action or their privies. (*Chicot County Drainage District* v. *Baxter State Bank,* 308 U. S. 371; *Miller* v. *Tyler,* 58 N. Y. 477.) Neither the decedent nor the appellant here were, however, parties to the action, though the decedent knew that such an action had been begun on the ground that Ernest H. Davis was ' living in adulterous intercourse with ' her. The divorce action was a proceeding *in rem* with respect to the status of the parties to the action and the judgment of divorce establishes that from that time the parties no longer bear the rela-

tion of husband and wife. To that extent the judgment is conclusive against all the world. The question remains how far the findings of fact which the decree recites or upon which the judgment is necessarily based are binding upon one of the parties to the action in litigation with other persons who were not parties to the action.

" The judgment of divorce obtained in New York by the first wife against Ernest H. Davis is necessarily based upon the fact that until then a valid marriage between the parties to the divorce action was in existence. If that fact was conclusively established not only as between the parties to the divorce action, but also as between the defendant in the divorce action and the woman whom he had married in Nevada and with whom he lived both before and after the judgment of divorce, then, of course, he cannot be heard now to assert that the Nevada decree of divorce dissolved the earlier marriage between himself and the wife who subsequently obtained a decree of divorce, and that no valid marriage existed between them when judgment of divorce was rendered in New York. If it is not conclusive in litigation between the husband and a person who was not a party to the divorce action, then we must give effect to the Nevada decree in accordance with the provisions of the Federal Constitution as now construed by the Supreme Court of the United States."

I am at a loss to reconcile the opinion in *Matter of Lindgren* (293 N. Y. 18) with section 118 of the Surrogate's Court Act. This was discussed in the dissenting opinion. However, in that matter the court said at page 22: " It may well be that the decedent or his personal representative acting in his behalf could not question the Florida decree." (Citing *Hynes* v. *Title Guarantee & Trust Co.*, 273 N. Y. 612.) In other words, the Court of Appeals, although refusing the right of the widow to administer the estate, admitted the possibility of her sharing in the estate.

In *Tyler* v. *Aspinwall* (73 Conn. 493) the defendant claimed an interest in the estate of Charles Tyler as his widow. The plaintiffs, heirs at law of the deceased, claimed that the defendant was married to one Sumner D. Aspinwall of Newark, New Jersey, and as his wife lived with him in that State until May, 1893. In September, 1893, she brought a suit for divorce against him in the Superior Court in Fairfield County, on the ground of his habitual intemperance and intolerable cruelty, and in February, 1894, said court granted her a divorce on the latter ground. Among other things the plaintiffs claimed that the judgment of divorce was wrongfully and fraudulently obtained, to the damage

and injury of the plaintiffs, and asked that the judgment of divorce be set aside, vacated and annulled. Apparently on this question depended the distribution of the estate of the deceased. It was said at pages 498–499: '' The judgment which the plaintiffs seek to open is one of a peculiar character. It establishes the personal *status* of the parties to it in a particular which was of the highest importance to the parties and to the community. They had been married. It made them single and unmarried. If such a judgment can, under any circumstances, be reopened at the suit of a stranger, this judgment cannot be reopened at the suit of the plaintiffs. Its consequences, if harmful to them, are of too remote and indirect a character to give them any cause of action. The court is not called upon to exercise this power at the instance of such parties. Courts are instituted to give relief to parties whose rights have been invaded, and to give it at the instance of such parties; and a party whose rights have not been invaded cannot be heard to complain if the court refuses to act at his instance in righting the wrongs of another who seeks no redress. The courts are practically unanimous in holding that it is not error to refuse to exercise the power here in question, at the instance of a mere stranger whose rights are not at all affected by the judgment he seeks to have set aside. *Foster* v. *Mansfield, C. & L. M. & R. Co.*, 146 U. S. 88; *Aetna Ins. Co.* v. *Aldrich*, 38 Wis. 107; *Drexel's Appeal*, 6 Pa. St. 272; *Robinson* v. *Stevens*, 63 Vt. 555; *Smith* v. *Hall*, 69 Conn. 651, 665; 1 Black on Judg. §§ 317, 359. This is merely a special application of the wide, general principle that courts will act only in behalf of parties who show themselves entitled to such action. They sit to vindicate rights at the instance of parties whose rights have been invaded, and not to vindicate mere abstract principles of justice at the instance of any one.''

In *Kirby* v. *Kent* (172 Miss. 457) the court, following the case of *Tyler* v. *Aspinwall* (*supra*), quoted in the opinion *Ruger* v. *Heckel et al.* (85 N. Y. 483) and *Kinnier* v. *Kinnier* (45 N. Y. 535). The court said at page 471: '' The question raised here by the appellants places them in the same position as the heirs at law in the *Aspinwall* case, *supra,* when they sought to have set aside the decree of divorce obtained by Mrs. Aspinwall prior to her marriage to their intestate, Tyler. In the case at bar they have set up the invalidity of the marriage because a divorce granted Mrs. Kent prior thereto is alleged to be void. They were not interested in that divorce. They cannot have it set aside as a matter of affirmative defense so that they may inherit, instead of the wife, the estate of the intestate. Their alleged rights are

too remote, and the finding of the court in the divorce proceeding here involved is clear and unequivocal, and is not disputed by the record.''

John Blum married Nettie Blum after the divorce had been obtained by her former husband, Harold Stevenson. The decree granted in that divorce proceeding was never questioned by either of these parties. Stevenson remarried as did his former wife, Nettie. Blum during his lifetime never questioned the right of Nettie to marry him. She was to all intents and purposes his legal wife at the time of his death.

*Hynes* v. *Title Guarantee & Trust Co.* (273 N. Y. 612) was an action for the establishment and admeasurement of dower. The complaint alleged that the plaintiff and the testator were married in the State of New York on April 10, 1926. The first affirmative defense of Dorothy B. Hood, the testator's adopted infant daughter, alleged that the testator in 1915 married one Nellie A. Lowen; that in 1923 he procured a divorce in France from her on grounds not recognized as sufficient for divorce under the laws of this State; that she was alive in 1926 and the legal wife of the testator at the time when plaintiff married him; and that the marriage which the testator attempted to contract with plaintiff was a nullity. She further alleged that the consideration for the alleged agreement as to dower in the real estate described in Schedule B was based upon a valid matrimonial relationship between plaintiff and the testator, whereas in fact and in law no such relationship existed, and the agreement was void; and, therefore, that the plaintiff was not possessed of the dower rights claimed by her. The second affirmative defense of the infant defendant alleged that the French divorce never became final and effective under the laws of France, and that by reason thereof the testator did not have legal capacity to contract a valid marriage with plaintiff on April 10, 1926. The court affirmed the decision of the Special Term which struck out these affirmative defenses.

It appears to me that this case lends strong support to the contention of the petitioner that the executor and the brother of the deceased were strangers to the divorce proceeding of the Pennsylvania court and cannot avail themselves of this defense.

The motion to strike out the first defense is hereby granted. Submit order.