In the Matter of the Estate of OSHER H. FLEISCHER, Deceased.

Surrogate's Court, New York County, March 10, 1948.

*Jack Goldstein* for Anne Singer, petitioner.

*George L. Livingston & Maxwell Wyckoff* for Sarah S. Fleischer, cross petitioner and respondent.

*Solomon Berger* and *Samuel Cooperman* for Eva Fleischer, cross petitioner and respondent.

*Myles Levinson* for Esther Feldman and others, respondents.

COLLINS, S. In this application letters of administration on the estate of the decedent are sought (1) by certain of the children of the decedent, (2) by Eva Fleischer, the second wife of the decedent, whom he married after his first wife's death and against whom he obtained a decree of divorce in Mexico, and (3) by Sarah Fleischer, a third wife whom he thereafter married. Each of the latter two women claims to be the lawful spouse of the decedent and entitled to administer the estate.

Decedent and Eva Fleischer were married at Brooklyn, New York, on July 31, 1928. He was then a widower. No issue was born of that marriage. He left six children by his prior marriage. On December 2, 1941, the decedent and Eva Fleischer entered into a separation agreement. Under its terms the parties were to live separate and apart; the wife accepted a certain sum in full settlement and in release of all her claims against the decedent for past and future maintenance and support; each of the parties released all of his or her interest, right or claim to the separate estate of the other, either before or after the death of either; and they further agreed that in the event of the institution of any action or proceeding in any court for a divorce, the final judgment of divorce should contain as part thereof the terms of the separation agreement, and that should the husband at any time in the future commence an action for divorce in any jurisdiction outside of the State of New York where the husband might establish a residence the wife agreed that she would voluntarily appear in such action by proper counsel and submit to the jurisdiction of such court. On the day of the execution of the separation agreement the wife also signed a power of attorney addressed to a Mexican lawyer authorizing him to appear and represent her in the courts of the State of Chihuahua, Republic of Mexico, in any action for

divorce instituted against her by her husband. About the same time the parties also obtained a Rabbinical " Get " (divorce), which was to be held in escrow pending the obtaining of a civil decree of divorce.

Within a week after the execution of these instruments, the decedent went to Mexico. As appears by a certificate issued out of the Municipal Presidency of the City of Juarez, District of Bravos, State of Chihuahua, Republic of Mexico, the decedent appeared and registered there on December 9, 1941. On that date he also appeared personally and by attorney before the First Instance Court of the Bravos District of Chihuahua, and filed a suit for divorce against Eva Fleischer alleging as ground for the action incompatibility of temperaments. The court rendered judgment in favor of the decedent and against his wife, the judgment reciting among other things that the defendant Eva Fleischer through her legal representative answered the complaint filed against her, confessing and acknowledging it throughout all its parts and praying that final judgment be dictated. The judgment further recited " all the requirements of law being fulfilled  *  *  *  and, considering; That this court is competent to adjudge in the present case, in conformity with the provisions of Article 23 of the Law of Divorce." The terms of the separation agreement were embodied in the judgment.

After obtaining the divorce decree the decedent returned to the United States and within a short time thereafter, on March 4, 1942, in the State of New Jersey, entered into a ceremonial marriage with Sarah Fleischer with whom he lived continuously until the date of his death on August 22, 1946. There is no issue of that marriage.

The validity of the marriage to Sarah Fleischer depends upon the effect of the Mexican decree purporting to dissolve decedent's marriage to Eva Fleischer. The Mexican decree has been challenged by Eva Fleischer and by the decedent's children of his first marriage. Sarah Fleischer maintains that it is valid.

It has been well settled that so-called Mexican mail order divorces are invalid and will not be recognized by the courts of our state. (*Querze* v. *Querze,* 290 N. Y. 13; *Vose* v. *Vose,* 280 N. Y. 779; *Matter of Alzmann* v. *Maher,* 231 App. Div. 139; *May* v. *May,* 251 App. Div. 63; *Anonymous* v. *Anonymous,* 174 Misc. 906; *Matter of Flannagan,* N. Y. L. J., Oct. 31, 1944, p. 1112, col. 7.) All of these cases involved Mexican divorce decrees, in which neither plaintiff nor defendant ever visited Mexico, much less ever attempted to establish a residence or domicile there.

They obtained decrees of divorce from the Mexican courts entirely through the mails. In this case, however, the decedent actually went to Mexico and registered in the City of Juarez, District of Bravos, State of Chihuahua.

Our courts have generally recognized decrees of divorce of foreign countries as a rule of comity unless it appeared that the foreign court did not have jurisdiction over the subject matter or the parties. The jurisdiction of the Mexican court to grant a decree or judgment of divorce upon the facts here existent under its statutes has not been attacked. No one contends that there was any irregularity in the proceedings in the Mexican court. The plaintiff, the decedent, personally appeared there. Residence or domicile for any length of time does not appear to be required by Mexican law. The only question, therefore, is whether the decree of the Mexican court entered upon the personal appearance of the plaintiff in that court and upon the appearance of the defendant by her attorney in fact who consented to the entry of such decree, where no limitation of time for residence or domicile is prescribed by the laws of Mexico as a prerequisite to the institution of a divorce action, will be refused recognition by our courts as in contravention of our public policy.

Whereas so-called mail order divorce cases have been frequent in our courts, the only authority resembling the present situation in this jurisdiction is *Leviton* v. *Leviton* (6 N. Y. S. 2d 535, modified on other grounds 254 App. Div. 670). In that case plaintiff and defendant appeared on a certain day in person in the same district court in which the decedent here obtained his decree of divorce. They registered in the Mexican court and judgment was filed and recorded in favor of the plaintiff. The defendant was personally served with process in that city, appeared by attorney and submitted himself to the jurisdiction of the court. The judgment of divorce recited among other things that the domicile of the parties and the cause of action had been proven and that the competency of the court to adjudge had been properly established. In refusing to disturb the Mexican decree, McCook, J., said (p. 537.): " Moral, ethical or social considerations, when embodied in the declared public policy of this state, undoubtedly permit our courts on appropriate occasion to refuse recognition of divorces granted by other jurisdictions. The Federal Constitution does not forbid such refusal. On the other hand, New York courts customarily give full recognition to divorces granted in other states and countries even where the

ground, the domicile, or other prerequisites, singly or together, are found to be such that they would be held insufficient towards securing a New York decree after a trial taking place here. The ultimate question raised by the first defense is, therefore, whether our public policy justifies departure, in this case, from the general rule. * * * On this motion there can be no dispute that all the acts enumerated in the first defense actually were performed. The circumstance that they transpired within twenty-four hours of one another is not in and of itself sufficient to upset the decree. Upon the face of the complaint now under discussion we may discover an element of suspicion through the simultaneous occurrence of so many material events. That is, however, answered and overcome by our duty to recognize the jurisdiction of the Mexican court, established by the appearance of both parties before it. The Mexican law respecting residence has been followed. The establishment of a domicile or residence in the strict sense is a question both of intent and act. The parties acted; we must accept the Mexican court's conclusion upon their intent.''

Essentially, the facts here, as in the *Leviton* case (*supra*), present a situation where one of the parties to a marriage, with the consent of the other expressed by voluntary appearance, took the marital *res* out of this State to invoke a foreign jurisdiction. The jurisdictional fact of domicile (*Williams* v. *North Carolina*, 325 U. S. 226) is not open to attack unless the public policy of our State intervenes to deny recognition to the decree of a foreign country which followed upon the submission of both parties to that jurisdiction.

Our Court of Appeals has said, in *Glaser* v. *Glaser* (276 N. Y. 296, 301–302): '' What is the public policy of a State and where do we look to find it? The decisions of this court have given it a limited legal meaning, for in *People* v. *Hawkins* (157 N. Y. 1, at p. 12) this court said: ' The term '' public policy '' is frequently used in a very vague, loose or inaccurate sense. The courts have often found it necessary to define its juridical meaning, and have held that a State can have no public policy except what is to be found in its constitution and laws. (*Vidal* v. *Girard's Exrs.*, 2 How. [U. S.] 127; *Hollis* v. *Drew Theological Seminary*, 95 N. Y. 166; *Cross* v. *U. S. T. Co.*, 131 N. Y. 343; *Dammert* v. *Osborn*, 140 N. Y. 40.) Therefore, when we speak of the public policy of the State, we mean the law of the State, whether found in the Constitution, the statutes or judicial records.' ''

Neither our statutes nor our judicial decisions bar recognition of·a foreign decree of divorce where the foreign court was com-

petent to act by reason of it having acquired jurisdiction under its laws and statutes. This is so even though the main purpose of the parties in going to a sister State was to procure the divorce. (*Glaser* v. *Glaser, supra.*) No reason appears for the public policy of our State to differently regard the resort of the parties to a foreign country. (*Leviton* v. *Leviton, supra.*)

The bonds of matrimony between the decedent and Eva Fleischer were dissolved by a valid decree of divorce. The decedent was thereupon free to enter into the ceremonial marriage with Sarah Fleischer. This marriage has been established by competent testimony. She is held to be the lawful widow of the decedent.

There is suggestion that the execution of the separation agreement and the power of attorney to the Mexican attorney by Eva Fleischer was procured by the decedent as part of a fraudulent scheme to enable him to procure the Mexican divorce. The evidence discloses no facts to establish that such execution was induced by fraud or imposition. Eva Fleischer was fully advised of her rights and voluntarily signed the instruments. Neither is there any merit to her claim that the agreement was void as against public policy in that it was a contract tending to dissolve the marriage between the parties. (*Matter of Rhinelander*, 290 N. Y. 31; *Graham* v. *Hunter*, 266 App. Div. 576; *Gershman* v. *Lafayette Nat. Bank*, 178 Misc. 693.)

The separation agreement was valid and enforcible and in and of itself would have been a sufficient bar to her sharing in the estate of the decedent. The attack made by Eva Fleischer upon the separation agreement and the divorce decree was made solely for the purpose of obtaining a distributive share of the decedent's estate.

In *Senor* v. *Senor* (272 App. Div. 306, 312, affd. 297 N. Y. 800) Mr. Justice Peck said: " It is no necessary concomitant of a public policy against stipulating for divorce that those who have virtually succeeded in doing so be accommodated by our courts whenever it suits their convenience to retract. They do not have a call on that public policy as an escape from its violation. Rather, like being *in pari delicto,* the law leaves them where it finds them."

The terms of the separation agreement were incorporated and embodied *in toto* in the decree of divorce rendered by the Mexican Court against Eva Fleischer. Under subdivision (a) section 87 of the Decedent Estate Law, no distributive share of the estate of a decedent shall be allowed to a spouse against whom a final decree or judgment of divorce recognized as valid by the

law of this State has been rendered. She is therefore not a distributee of the estate and not entitled to letters of administration. Letters will be awarded to Sarah Fleischer, who is priorly entitled thereto as the lawful widow of the decedent, upon her qualifying pursuant to law.

Submit decree on notice accordingly.