**DREW**

**v.**

**HOBBY, Secretary of Department of Health, Education and Welfare.**

United States District Court,
S. D. New York.

July 19, 1954.

J. Howard Rossbach, New York City, Bessie D. Goldberg, Rockville Centre, and Stuart A. White, New York City, of counsel, for plaintiff.

J. Edward Lumbard, New York City, J. Donald McNamara, New York City, of counsel, for defendant.

EDELSTEIN, District Judge.

An action was brought by the plaintiff under the provisions of the Social Security Act, 42 U.S.C. § 405(g), 42 U.S.C.A. § 405(g), to obtain a review of the denial of her claim for Wife's Insurance Benefits, 42 U.S.C. § 402(b), 42 U.S.C.A. § 402(b), and an issue of law is presented on cross-motions for summary judgment.

The sole issue for determination is whether the plaintiff is the wife of Frank L. Drew, with whom she entered into a ceremonial marriage more than twenty-six years ago, she being in all other respects entitled to the claimed benefits. Prior to her marriage to Mr. Drew, the plaintiff was married to Forrest Walker in New York, where both were domiciled. In 1927 Mr. Walker went to Mexico and filed a suit for a divorce in the Court of Original Jurisdiction for Civil Matters, District of Hermosillo, Sonora, Mexico. Mrs. Walker did not personally travel to Mexico, but she appeared in the proceedings by duly authorized counsel. It is undisputed that the sole purpose of Mr. Walker's journey to Mexico was to obtain a divorce. On March 29, 1927, the Mexican court rendered its decree granting the divorce on the grounds of abandonment, reciting that the plaintiff, Mr. Walker, was a resident of Hermosillo, Sonora, Mexico, and that the defendant, Mrs. Walker, was a resident of the city of New York, and further reciting that under the laws of Mexico "this action is cognizable by this court which has jurisdiction over this matter." The decree was served on the parties, and on April 18, 1927, it was made final by order of the Mexican court. Both parties subsequently remarried, and Mr. Walker is still living. If the Mexican divorce is invalid, then, of course, the plaintiff is not entitled to benefits as the wife of Mr. Drew.

The Social Security Act directs that the determination of the issue be governed by the New York law of intestate succession.[1] though it appears that the principles of law applied are not peculiar to the Surrogate's jurisdiction [2] but are of general application. The basis of the

---

[1]. 42 U.S.C. § 416(h) (1), 42 U.S.C.A. § 416(h) (1): "In determining whether an applicant is the wife * * * the Administrator shall apply such law as would be applied in determining the devolution of intestate personal property by the courts of the State in which such insured individual is domiciled at the time such applicant files application * * *." Frank L. Drew is the "insured individual" and he is domiciled in New York. The defendant claims no special Governmental status from which to attack the validity of the divorce, but in any event the statutory provision relegates defendant to the same status as any other litigant in matters of intestate succession. The issue suggested by Matter of Blum's Estate, 185 Misc. 43, 55 N.Y.S.2d 651, concerning the interest necessary to permit a party to attack a foreign divorce, is neither discussed nor decided here, in view of the decision on other grounds.

[2]. In New York the Surrogate has jurisdiction over matters of intestate succession, Surrogate's Court Act, § 40.

denial of benefits to the plaintiff is the referee's findings of fact that the plaintiff did not go to Mexico at the time of the divorce, that Walker went to Mexico solely for the purpose of obtaining a divorce and that it was not his intention to remain there. The conclusion followed that since neither party was a "bona fide resident of Mexico" the courts of New York would not recognize the divorce; consequently, plaintiff's subsequent marriage was invalid and she was not the wife of Frank L. Drew within the meaning of the Social Security Act so as to qualify for the benefits claimed. The Appeals Council, in affirming the referee's decision, adopted his findings of fact and statement of reasons and made the additional finding that neither the claimant nor Walker was "domiciled" in Mexico either at the time of the commencement of the Mexican divorce proceedings, nor during the pendency of those proceedings, nor when the decree was rendered.

██ Thus, it appears that the sole reason given for the infirmity of the divorce and the denial of benefits to the plaintiff is the lack of domicile of the parties in Mexico, without regard for any other considerations. But it was long ago decided in New York that lack of domicile is not necessarily a bar to the recognition of a foreign divorce. Gould v. Gould, 235 N.Y. 14, 138 N.E. 490. In that case two domiciliaries of New York State who had resided in France for long periods submitted to the jurisdiction of a French court which applied standards consistent with those of New York for the granting of the divorce. In Glaser v. Glaser, 276 N.Y. 296, 12 N.E.2d 305, the same court decided the question left open in the Gould case by recognizing as valid, under the doctrine of comity,[3] a foreign divorce under the laws of Nevada, where the wife had appeared by counsel, and accepting the allegation that the husband had gone to the foreign state for the purpose of securing a divorce. See also, Oettgen v. Oettgen, 196 Misc. 937, 94 N.Y.S.2d 168. Consequently, the administrative finding of the lack of domicile, accepted conclusively as it must be,[4] is not in itself a sufficient basis, or any basis at all, for a determination that the Mexican divorce will not be recognized by the New York courts. Such a finding would be an adequate basis for that determination if the divorce decree involved were of the "mail-order" variety, Caldwell v. Caldwell, 298 N.Y. 146, 81 N.E. 2d 60; Querze v. Querze, 290 N.Y. 13, 47 N.E.2d 423; Vose v. Vose, 280 N.Y. 779, 21 N.E.2d 616; Alzmann v. Maher, 231 App.Div. 139, 246 N.Y.S. 60; May v. May, 251 App.Div. 63, 295 N.Y.S. 599; Anonymous v. Anonymous, 174 Misc. 906, 22 N.Y.S.2d 598; Matter of Flannagan's Estate, Sur., 51 N.Y.S.2d 369; see Magner v. Hobby, 2 Cir., 215 F.2d 190 or if the decree had been obtained ex-parte, Fischer v. Fischer, 254 N.Y. 463, 173 N.E. 680; Lefferts v. Lefferts, 263 N.Y. 131, 188 N.E. 279; Imbrioscia v. Quayle, 278 App.Div. 144, 103 N.Y.S.2d 593; Baumann v. Baumann, 132 Misc. 217, 228 N.Y.S. 539, affirmed 224 App.Div 719, 229 N.Y.S. 833, modified 250 N.Y. 382, 165 N.E. 819. Indeed, the cases cited by the referee in his decision and by counsel for the defendant were all cases of those types and they afford no support for the legal conclusion reached.

██ The divorce decree here involved was neither a "mail-order" nor an ex-parte divorce. It is conceded that the husband actually went to the State of Sonora in Mexico to institute his action and that his wife, the plaintiff here, appeared in that action through authorized counsel. If the decree were that of a

---

3. Prior to the decisions of the United States Supreme Court under which the case undoubtedly would have been decided as a matter of constitutional full faith and credit. Sherrer v. Sherrer, 334 U.S. 343, 68 S.Ct. 1087, 92 L.Ed. 1429; Coe v. Coe, 334 U.S. 378, 68 S.Ct. 1094, 92 L.Ed. 1451; Johnson v. Muelberger, 340 U.S. 581, 71 S.Ct. 474, 95 L.Ed. 552; Cook v. Cook, 342 U.S. 126, 72 S.Ct. 157, 96 L.Ed. 146.

4. 42 U.S.C. § 405(g), 42 U.S.C.A. § 405 (g).

sister state, it would be entitled to full faith and credit under Article IV, section 1 of the United States Constitution, Cook v. Cook, 342 U.S. 126, 72 S.Ct. 157, 96 L.Ed. 146; cf., Sherrer v. Sherrer, 334 U.S. 343, 68 S.Ct. 1087, 92 L.Ed. 1429; Coe v. Coe, 334 U.S. 378, 68 S.Ct. 1094, 92 L.Ed. 1451; Johnson v. Muelberger, 340 U.S. 581, 71 S.Ct. 474, 95 L.Ed. 552. But in dealing with a divorce granted by a court in a foreign country the question is one of comity.[5] The courts of New York will recognize the decrees of divorce of foreign countries where to do so will not offend the public policy of the state. "New York courts customarily give full recognition to divorces granted in other * * * countries even where the ground, the domicile, or other prerequisites, singly or together, are found to be such that they would be held insufficient towards securing a New York decree after a trial taking place here." Leviton v. Leviton, Sup., 6 N.Y.S.2d 535, 537. It is not offensive to the public policy of New York to recognize, despite the absence of the "jurisdictional fact" of domicile, a foreign divorce obtained by parties to a marriage who have taken the marital res out of the state for the purpose of invoking a divorcing jurisdiction, by the actual appearance of one of the parties coupled with the voluntary appearance of the other through authorized counsel. Leviton v. Leviton, supra; In re Fleischer's Estate, 192 Misc. 777, 80 N.Y.S.2d 543; Mountain v. Mountain, Sup., 109 N.Y.S.2d 828; Caswell v. Caswell, Sup., 111 N.Y.S.2d 875, affirmed 280 App.Div. 969, 117 N.Y.S.2d 326. Inasmuch as there are no contrary considerations of public policy involved in the recognition of such a divorce, the "jurisdictional fact" of domicile is not open to attack by a party to it and the cited cases support at least the proposition that a stranger unprejudiced in a pre-existing right is similarly precluded. No attack is made upon the regularity of the proceedings nor upon the jurisdiction of the Mexican court, which is expressly noted in the decree. In these circumstances, the administrative finding of the lack of domicile of one or both parties to the Mexican divorce is of no significance. The courts of New York would, in comity, give full recognition to the foreign judgment.

Since the denial of benefits claimed by plaintiff was predicated solely upon the erroneous conclusion that the Mexican divorce was not entitled to recognition in New York, the denial was erroneous, and the plaintiff's motion for summary judgment will be granted. The defendant's motion, of course, will be denied.

example, where the court indicated that it was aware of no distinction between Mexico and Nevada on issues similar to those at bar here.

5. Although the decisions freely cite full faith and credit cases as authoritative in comity problems. See Leviton v. Leviton, Sup., 6 N.Y.S.2d 535 at page 538, for