

**2002 Decisions**

**Opinions of the United States Court of Appeals for the Third Circuit**

1-11-2002

# City of Philadelphia v. Beretta USA Corp.

Precedential or Non-Precedential:

Docket 01-1118

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2002

### Recommended Citation

"City of Philadelphia v. Beretta USA Corp." (2002). *2002 Decisions.* Paper 11.
http://digitalcommons.law.villanova.edu/thirdcircuit_2002/11

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2002 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed January 11, 2002

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 01-1118

CITY OF PHILADELPHIA; GUARDIAN CIVIC LEAGUE
OF PHILADELPHIA; ASPIRA, INC. OF PENNSYLVANIA;
RESIDENTS ADVISORY BOARD; NORTHEAST HOME
AND SCHOOL; PHILADELPHIA CITIZENS FOR
CHILDREN AND YOUTH,

      Appellants

v.

BERETTA U.S.A. CORP.; BROWNING INC.; BRYCO ARMS,
INC.; COLTS MANUFACTURING CO., INC.; GLOCK, INC.;
HARRINGTON & RICHARDSON, INC. ("H&R");
INTERNATIONAL ARMAMENT CORP., d/b/a INERARMS
INDUSTRIES, INC.; *KEL-TEC CNC INDUSTRIES, INC.;
LORCIN ENGINEERING CO., INC.; NAVEGAR, INC., d/b/a
INTRATEC; PHOENIX/RAVEN ARMS; SMITH & WESSON
CORP. INC.; STURM, RUGER & COMPANY, INC.;
TAURUS INTERNATIONAL FIREARMS

(*Amended per Clerk Order of 2/1/01)

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civ. No. 00-2463)
District Judge: Honorable Berle M. Schiller

Argued December 6, 2001

BEFORE: ALITO, AMBRO, and GREENBERG,
Circuit Judges

(Filed: January 11, 2002)

Kenneth I. Trujillo, City Solicitor
William R. Thompson, Chair of
 Litigation
Richard Feder
Chief Deputy City Solicitor, Appeals
Marcia Berman (argued)
Deputy City Solicitor, Appeals
Elise M. Bruhl
Assistant City Solicitor, Appeals
Mary F. Dixon
Assistant City Solicitor, Appeals
City of Philadelphia Law Department
One Parkway Building
1515 Arch Street, 17th Floor
Philadelphia, PA 19102-1595

Michael J. Boni
Kohn, Swift & Graf
One South Broad Street, Suite 2100
Philadelphia, PA 19107

Richard Lewis
Alexander Barnett
Cohen, Milstein, Hausfeld & Toll
West Tower, Suite 500
1100 New York Avenue, N.W.
Washington, D.C. 20005-3964

Robert Nelson
Jonathan Selbin
Lieff, Cabraser, Heimann &
 Bernstein
275 Battery Street, 30th Floor
San Francisco, CA 94111

Christopher R. Booth, Jr.
Booth & Tucker
230 South Broad Street, 2d floor
Philadelphia, PA 19102

 Attorneys for appellants

2

Lawrence S. Greenwald (argued)
Catherine A. Bledsoe
Gordon, Feinblatt, Rothman,
Hoffberger & Hollander
233 East Redwood Street
Baltimore, MD 21202

Louis R. Moffa, Jr.
Schnader, Harrison, Segal & Lewis
220 Lake Drive East
Suite 200
Cherry Hill, NJ 08002-1165

 Attorneys for appellee
Beretta U.S.A. Corp.

Eric A. Weiss
Marshall, Dennehey, Warner,
Coleman & Goggin
1845 Walnut Street
16th Floor
Philadelphia, PA 19103

William M. Griffin, III
Jonann Coniglio
Friday, Eldredge & Clark
Suite 2000
400 West Capitol
Little Rock, AR 72201-3493

 Attorneys for appellee
Browning, Inc.

Robert E. Scott, Jr.
Scott H. Phillips
Semmes, Bowen & Semmes
250 West Pratt Street
Baltimore, MD 21201

Debra S. Dunne
Thorp, Reed & Armstrong
2005 Market Street
One Commerce Square, Suite 2010
Philadelphia, PA 19103

Michael C. Hewitt
Bruinsma & Hewitt
380 Clinton Ave., Unit C
Costa Mesa, CA 92626

 Attorneys for appellee
Bryco Arms, Inc.

Thomas E. Fennell (argued)
Michael L. Rice
Jones, Day, Reavis & Pogue
2727 North Harwood Street
Suite 100
Dallas, TX 75266-1515

John E. Iole
Jones, Day, Reavis & Pogue
Suite 3100
500 Grant St.
Pittsburgh, PA 15219-2502

 Attorneys for appellee
Colts Manufacturing Co., Inc.

John F. Renzulli
Renzulli & Rutherford
300 East 42nd Street
17th Floor
New York, NY 10017

 Attorneys for appellee
Glock, Inc. and Kel-Tec CNC
Industries, Inc.

Bradley T. Beckman
Beckman & Associates
Suite 910
2 Penn Center Plaza
Philadelphia, PA 19102

4

Michael I. Branisa
Michael J. Zomcik
Tarics & Carrington
5005 Riverway Drive
Suite 500
Houston, TX 77056-2196

 Attorneys for appellee
Phoenix Arms

Jeffrey S. Nelson
Shook, Hardy & Bacon
1200 Main Street
One Kansas City Place
Kansas City, MO 64105-2718

Robert C. Heim
George M. Gowen, III
Dechert, Price & Rhoads
1717 Arch Street
4000 Bell Atlantic Tower
Philadelphia, PA 19103-2793

 Attorneys for appellee
Smith & Wesson Corp., Inc.

Robert N. Spinelli
Catherine Jasons
Kelley, Jasons, McGuire & Spinelli
1500 Market Street
Suite 1500
Centre Square West
Philadelphia, PA 19102

James P. Dorr
Sarah L. Olson
Jeffrey A. McIntyre
Wildman, Harrold, Allen & Dixon
225 West Wacker Drive
Chicago, IL 60606

 Attorneys for appellee
Sturm, Ruger & Company, Inc.

5

Timothy A. Bumann
Budd, Larner, Gross, Rosenbaum,
Greenberg & Sade
127 Peachtree Street, N.E.
Suite 715
Atlanta, GA 30303-1601

Christina Fichera Dente
Budd, Larner, Gross, Rosenbaum,
Greenberg & Sade
150 John F. Kennedy Parkway
CN 1000
Short Hills, NJ 07078-0999

 Attorneys for appellee Taurus
International Firearms

James M. Beck
Pepper Hamilton
18th & Arch Streets
3000 Two Logan Square
Philadelphia, PA 19103-2799

Hugh F. Young, Jr.
Product Liability Advisory Council,
 Inc.
1800 Centennial Park Drive
Suite 510
Reston, VA 22091

 Attorneys for amicus curiae
Product Liability Advisory Council

OPINION OF THE COURT

GREENBERG, Circuit Judge.

This matter comes on before this court on appeal from an order of the district court granting defendants' motion to dismiss plaintiffs' complaint. See City of Philadelphia v. Beretta, 126 F. Supp. 2d 882 (E.D. Pa. 2000) ("Beretta"). On this appeal, we determine whether the defendant gun manufacturers can be liable under negligence, negligent entrustment, or public nuisance theories for costs incurred

by plaintiffs, principally the City of Philadelphia, associated with the criminal use of handguns. For the reasons we set forth below, we answer this question in the negative and thus will affirm the order of the district court.

I. BACKGROUND

Plaintiffs, City of Philadelphia (the "City") and five civic organizations (the "organizational plaintiffs"),1 brought suit in the Court of Common Pleas of Philadelphia County, Pennsylvania, against defendants, 14 out-of-state gun manufacturers, asserting claims of public nuisance, negligence, and negligent entrustment under Pennsylvania law. Plaintiffs do not contend that defendants violated any of the federal or state laws specifically regulating the sale and distribution of firearms in the United States and in the Commonwealth of Pennsylvania.2 Instead, plaintiffs allege that defendants' conduct in the marketing and distribution of handguns allows them to fall into the hands of criminals and children, creating and contributing to their criminal use in Philadelphia. Plaintiffs assert that their injuries include the costs associated with preventing and responding to incidents of handgun violence and crime. See app. at 34 (Compl. PP 79-80) (listing costs including those associated with criminal justice administration, police services, emergency medical services and educational programs).

The defendants timely removed the case to the district court on the basis of diversity of citizenship and, following removal, moved to dismiss the complaint under Fed. R. Civ. P. 12(b)(1) and 12(b)(6).3 By opinion and order dated

_____

1. Joining the City are ASPIRA, Inc., a civic group providing services for Latinos; the Guardian Civic League of Philadelphia, Inc., a membership organization largely of minority police officers; Residents Advisory Board, an umbrella organization for public housing residents' councils; Northeast Home and School, a high school parents' organization; and Philadelphia Citizens for Children and Youth, a children's advocacy group. See app. at 11-12 (Compl. PP 3-7).
2. See Beretta, 126 F. Supp. 2d at 887-88 (summarizing applicable regulations).

3. The district court analyzed plaintiffs' standing to sue under both Rules 12(b)(1) and 12(b)(6). The court concluded, with respect to Rule 12(b)(1),

7

December 20, 2000, the district court concluded, inter alia, that plaintiffs failed to state claims for negligence, negligent entrustment, and public nuisance. Thus, the district court dismissed the complaint with prejudice,4 following which

_____

that the organizational plaintiffs failed to satisfy Article III's standing
requirements. Thus, the court lacked jurisdiction to the extent that the organizational plaintiffs advanced claims because it found no causal nexus between the defendants' conduct and the alleged injuries of the organizational plaintiffs' members and because the action cannot proceed in the absence of the participation of the members of the organizational plaintiffs' groups who actually sustained damages. See Beretta, 126 F. Supp. 2d at 895-97 (recognizing that damages of organizational plaintiffs' members "are not common to the entire membership, nor shared by all in equal degree") (citation and internal quotations omitted). We are in agreement with the district court and thus will affirm the order for summary judgment with respect to the organizational plaintiffs on jurisdictional grounds. See South Camden Citizens in Action v. New Jersey Dep't of Envtl. Prot., ___ F.3d ___, ___ n.13, No. 01-2224, 2001 WL 1602144, at *14 n.13 (3d Cir. Dec. 17, 2001). We nevertheless consider the case on the merits under Rule 12(b)(6) as the City's Article III standing is not questioned or in doubt and we may not be required in all circumstances to consider standing before considering the merits of a party's case. See Maio v. Aetna Inc., 221 F.3d 472, 482 n.7 (3d Cir. 2000). Nevertheless, it should be understood that although we refer to the organizational plaintiffs in our discussion of the merits of the case, we are dismissing the action as to them under Rule 12(b)(1).

4. In addition to determining that plaintiffs fail to state claims, the district court also concluded that the claims of the City, but not the organizational plaintiffs, are barred by the Pennsylvania Uniform Firearms Act, 18 Pa. Cons. Stat. Ann. S 6101 et seq. (West 2000) ("UFA"). Section 6120 of the UFA limits the City's power to regulate firearms. See Beretta, 126 F. Supp. 2d at 889 (citation omitted). The district court found that section 6120(a.1), which prohibits home rule municipalities from suing gun manufacturers for the production and distribution of firearms except in certain contract or warranty actions, bars the City's claims. See id. at 890. The City contends that the UFA does not bar its action for public nuisance because the UFA only bars suits for the "lawful" manufacture of firearms and does not preclude claims of "unlawful" conduct. The City further challenges the constitutionality of the statute, claiming that its cause of action vested before section 6120(a.1) became law and that the deprivation of its right to sue violates both due process and the separation of powers doctrine.

8

plaintiffs timely appealed.[5]

II. STANDARD OF REVIEW

We exercise plenary review on this appeal. See Children's Seashore House v. Waldman, 197 F.3d 654, 658 (3d Cir. 1999), cert. denied, 530 U.S. 1275, 120 S.Ct. 2742 (2000). Of course, we can affirm the order for dismissal"only if, accepting all well-pleaded allegations in the complaint as true, and viewing them in the light most favorable to plaintiff, plaintiff is not entitled to relief." Maio v. Aetna, Inc., 221 F.3d 472, 482 (3d Cir. 2000) (quoting In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1420 (3d Cir. 1997)).

III. DISCUSSION

A. Public Nuisance

A public nuisance is "an unreasonable interference with a right common to the general public." Camden County Bd. of Chosen Freeholders v. Beretta U.S.A. Corp., 273 F.3d 536, 539 (3d Cir. 2001) ("Camden County") (citations and

_____

Additionally, the district court concluded that the City may not recover funds expended on law enforcement and health services under the municipal cost recovery rule. See id. at 894-95 (quoting the Pennsylvania Commonwealth Court for the proposition that "[t]he cost of public services for protection from a safety hazard is to be borne by the public as a whole, not assessed against a tortfeasor whose negligence creates the need for the service") (citations and internal quotation marks omitted). There is, however, some authority for the proposition that public entities may recover damages for the costs of abating public nuisances. See City of Flagstaff v. Atchison, Topeka & Santa Fe Ry. Co., 719 F.2d 322, 324 (9th Cir. 1983) (citations omitted).

We need not address these alternate grounds for dismissal, because, as stated infra, plaintiffs fail to state claims for negligence, negligent entrustment, or public nuisance. Moreover, the UFA does not deny the City Article III standing.

5. The district court had jurisdiction over this matter pursuant to 28 U.S.C. SS 1332 and 1441 and we have jurisdiction under 28 U.S.C. S 1291.

internal quotations omitted) (affirming dismissal of public nuisance claim against gun manufacturers under New Jersey law in Camden County Bd. of Chosen Freeholders v. Beretta U.S.A. Corp., 123 F. Supp. 245 (D.N.J. 2000)). The courts traditionally have limited the scope of nuisance claims to interference connected with real property or infringement of public rights. Id. (citing W. Page Keeton et al., Prosser and Keeton on Torts S 86 at 617–18 (5th ed. 1984)). Thus, in Camden County we observed that the scope of nuisance law has "returned to its more narrow focus on these two traditional areas." Id. at 540. Moreover, "[f]or the interference to be actionable, the defendant must exert a certain degree of control over its source." Id. at 539 (citation omitted); see, e.g., Commonwealth of Pennsylvania v. Barnes & Tucker Co., 319 A.2d 871 (Pa. 1974) (defendants controlled mine with acid drainage); Muehlieb v. City of Philadelphia, 574 A.2d 1208, 1209 (Pa. Commw. Ct. 1990) (defendant kept at least 20 dogs on residential street); Groff v. Borough of Sellersville, 314 A.2d 328, 329–30 (Pa. Commw. Ct. 1974) (defendants owned dilapidated building).

In Camden County we observed that "no New Jersey court has ever allowed a public nuisance claim to proceed against manufacturers [of] lawful products that are lawfully placed in the stream of commerce." Camden County, 273 F.3d at 540. Likewise, the parties here do not present any Pennsylvania case allowing such a claim. Indeed, we indicated in Camden County that "[t]o extend public nuisance law to embrace the manufacture of handguns would be unprecedented nationwide for an appellate court." Id. at 540–41; see also Bubalo v. Navegar, Inc., No. 96-C-3664, 1998 WL 142359 (N.D. Ill. Mar. 20, 1998) (dismissing nuisance claim against gun manufacturer).6

_____

6. Thus, courts enforce the boundary between public nuisance law and product liability. See, e.g., Camden County, 273 F.3d at 540 (stating that otherwise, public nuisance law "would become a monster that would devour in one gulp the entire law of tort") (citation omitted). Although plaintiffs do not plead this case "as a classic products liability action, there is no escaping that [the] action is dependent on [defendants'] having supplied the [product]. Thus, regardless of how [plaintiffs] pleaded [their] claims, they include a products liability aspect." Angus v. Shiley, Inc., 989 F.2d 142, 147 (3d Cir. 1993).

10

Further, public nuisance is a matter of state law, and it is not the role of a federal court to expand state law in ways not foreshadowed by state precedent. See Camden County, 273 F.3d at 541. Instead, a federal court follows the precedents of the state's highest court and predicts how that court would decide the issue presented. See id. Pennsylvania precedent does not support the public nuisance claim plaintiffs advance here, and we cannot predict that the Pennsylvania Supreme Court will choose to expand state public nuisance law in the manner plaintiffs urge. See Leo v. Kerr-McGee Chem. Corp., 37 F.3d 96, 101 (3d Cir. 1994) (stating that, when deciding diversity case, " `[F]ederal courts may not engage in judicial activism. Federalism concerns require that we permit state courts to decide whether and to what extent they will expand state common law. . . . Our role is to apply the current law of the jurisdiction, and leave it undisturbed.' ") (quoting City of Philadelphia v. Lead Indus. Ass'n, 994 F.2d 112, 123 (3d Cir. 1993)).7

Moreover, the gun manufacturers do not exercise significant control over the source of the interference with the public right.8 Consequently, the causal chain is too

_____

7. Pursuant to Fed. R. App. P. 28(j) plaintiffs have supplied us with the opinion in James v. Arcadia Mach. & Tool, No. ESX-L-6059-99 (N.J. Super. Ct. Law. Div. Dec. 11, 2001), which involved claims that are similar to but broader than those in this case. We note that the court in James took a different approach than we take, as it pointed out "that the New Jersey courts are not loathe to enter into new territory where a loss has been suffered." Slip op. at 16. Moreover, the James court was critical of our opinion in Camden County which it stated did not bind it. Id. at 21. While we do not doubt that a New Jersey state court need not follow Camden County, we regard that case as significant authority on this appeal which, however, we are deciding under Pennsylvania law. In this regard we point out that we have commented previously when deciding issues of Pennsylvania law contrary to New Jersey law that we "predicate our ruling on more conventional principles" than those underlying the New Jersey case. See Ryan v. Butera, Beausang, Cohen & Brennan, 193 F.3d 210, 218-19 (3d Cir. 1999). We doubt that if confronted with the complaint here that the Supreme Court of Pennsylvania would uphold it.

8. In Camden County, we rebuffed the plaintiffs' arguments that "proximate cause, remoteness, and control" were not essential to a

11

attenuated to make out a public nuisance claim. See Camden County, 273 F.3d at 541 (finding that, even if public nuisance could encompass the lawful manufacture of handguns, the manufacturers nonetheless fail to exercise sufficient "control" over the source of the interference with the public right to be liable under a nuisance theory); Penelas v. Arms Tech., Inc., No. 99-01941 CA-06, 1999 WL 1204353, at *4 (Fla. Cir. Ct. Dec. 13, 1999) (dismissing public nuisance claims under Florida law and stating that gun manufacturers "have no ability to control" third parties' misconduct), aff 'd, 778 So. 2d 1042 (Fla. Dist. Ct. App. 2001). See also City of Cincinnati v. Beretta U.S.A. Corp., Nos. C-990729, C-990814, C-990815, 2000 WL 1133078, at *6 (Ohio Ct. App. Aug. 11, 2000) (affirming dismissal of nuisance claims against gun manufacturers), appeal allowed, 740 N.E.2d 1111 (Ohio 2001).

In Camden County we found that "even if the requisite element is not always termed `control' . . . a degree of control by the defendant over the source of the interference" is required and that the "causal chain" connecting gun manufacturers to the damages claimed by the City of Camden was "simply too attenuated to attribute sufficient control to the manufacturers to make out a public nuisance claim." Camden County, 273 F.3d at 541. In this case, as the district court observed, plaintiffs' "sole allegation of control [is] that the gun manufacturer[s] do not adopt policies which would place restrictions on the activities of the federally licensed firearms dealers." Beretta, 126 F. Supp. 2d at 901. Further, as in Camden County , "[t]he gun manufacturers supply their products to adult, independent federally licensed firearms dealers. The defendants are not in control of the guns at the time they are misused, nor do they control the independent firearms dealers." Id.

_____

public nuisance claim. Camden County, 273 F.3d at 541. But see Allegheny Gen. Hosp. v. Philip Morris, Inc., 228 F.3d 429, 446 (3d Cir. 2000) (stating in dictum that public nuisance claim"do[es] not require proximate cause"). Because of this court's statement in Allegheny General Hospital, the district court declined to analyze proximate cause in this case. See Beretta, 126 F. Supp. 2d at 903 n.14.

12

Accordingly, as plaintiffs fail to state a cognizable public nuisance claim against the gun manufacturers under Pennsylvania law, and as defendants lack the requisite control over the interference with a public right, we will affirm the district court's dismissal of plaintiffs' public nuisance claim.

B. Negligence and Negligent Entrustment9

The district court found that plaintiffs' negligence-based claims failed for lack of proximate cause because their injuries are too remote from the gun manufacturers' alleged conduct. See Beretta, 126 F. Supp. 2d at 903 (citations omitted).10 The doctrine of remoteness provides that "a plaintiff who complain[s] of harm flowing merely from the misfortunes visited upon a third person by the defendant's acts [is] generally said to stand at too remote a distance to recover." Holmes v. Securities Investor Prot. Corp., 503 U.S. 258, 268-69, 112 S. Ct. 1311, 1318 (1992) (citation omitted); see also Steamfitters Local Union No. 420 Welfare Fund v. Philip Morris, Inc., 171 F.3d 912, 928 (3d Cir. 1999) ("Steamfitters") (applying doctrine in suit against tobacco manufacturers), cert. denied, 528 U.S. 1105, 120 S.Ct. 844 (2000). Thus, a plaintiff who cannot establish " `some direct relation between the injury asserted and the injurious conduct alleged' " fails to plead "a key element for

_____

9. The elements of a negligence claim include: a legal duty, a breach of that duty, a causal relationship between the defendant's negligence and plaintiff 's injuries, and damages. See Martin v. Evans, 711 A.2d 458, 461 (Pa. 1998) (citation omitted). Negligent entrustment involves:

     permit[ting] a third person to use a thing or to engage in an activity
     which is under the control of the actor, if the actor knows or should
     know that such person intends or is likely to use the thing or to
     conduct himself in the activity in such a manner as to create an
     unreasonable risk of harm to others.

Beretta, 126 F. Supp. 2d at 902-03 (citing Ferry v. Fisher, 709 A.2d 399, 403 (Pa. Super. Ct. 1998)).

10. The district court also found that plaintiffs failed to allege facts sufficient to sustain a claim of negligent entrustment, as they did not allege that the gun manufacturers "directly entrust [their weapons] to individuals who are likely to use them in a negligent or criminal way." Beretta, 126 F. Supp. 2d at 903.

13

establishing proximate causation, independent of and in addition to other traditional elements of proximate cause." Laborers Local 17 Health & Benefit Fund v. Philip Morris, Inc., 191 F.3d 229, 235 (2d Cir. 1999) ("Laborers Local 17") (quoting Holmes, 503 U.S. at 268, 112 S.Ct. at 1318), cert. denied, 528 U.S. 1080, 120 S.Ct. 799 (2000). Accordingly, "an injury that is too remote from its causal agent fails to satisfy tort law's proximate cause requirement." Steamfitters, 171 F.3d at 921.

Remoteness is analyzed through the following six factors: (1) the causal connection between the defendant's wrongdoing and the plaintiff's harm; (2) the specific intent of the defendant to harm the plaintiff; (3) the nature of the plaintiff's alleged injury and whether it relates to the purposes of tort law; (4) whether the claim for damages is highly speculative; (5) the directness or indirectness of the alleged injury; and (6) the aim of keeping the scope of complex trials within judicially manageable limits, i.e., avoiding the risks of duplicative recoveries and the danger of complex apportionment. See Allegheny Gen. Hosp. v. Philip Morris, Inc., 228 F.3d 429, 438 (3d Cir. 2000) (citations and internal quotations omitted); Steamfitters, 171 F.3d at 924 (same).

Thoroughly applying the six factor analysis, the district court concluded that there is a weak causal connection between the gun manufacturers' conduct and the City's and the organizational plaintiffs' injuries. The court found that the gun manufacturers did not intend harm to plaintiffs; that plaintiffs' claims were "entirely derivative of [those of] others who would be more appropriate plaintiffs"; that tort law preferred a more balanced approach to recovery; and that plaintiffs' damages were too speculative to permit recovery. Beretta, 126 F. Supp. 2d at 906.

In its analysis, the district court examined the route a gun takes from the manufacturer to Philadelphia streets, finding it "long and tortuous." Id. at 904. First, the defendant manufacturers sell guns to licensees; second, the licenses sell the guns to dealers; third, the dealer sells it to a lawful purchaser acting as a straw buyer; fourth, the straw buyer transfers the weapon to a criminal or a youth; fifth, the transferee uses the gun to commit a crime, or the

14

youth injures himself or a companion; and finally, demand on the City's or the organizational plaintiffs' resources is increased. See id. at 904; Appellants' Br. at 82.11

Plaintiffs try to shorten the causal chain by arguing that the "thriving illegal market . . . injures [them], even before any guns acquired in the illegal market are actually used in the commission of a crime." Appellants' Br. at 75. This statement, however, does not reduce the links that separate a manufacturer's sale of a gun to a licensee and the gun's arrival in the illegal market through a distribution scheme that is not only lawful, but also is prescribed by statute with respect to the manufacturers' conduct. We reiterate that gun manufacturers first ship their guns to independent, federally licensed distributors and dealers. Only then may the licensed dealer sell the gun to a purchaser who has been cleared by the Federal Bureau of Investigation and approved by the Pennsylvania state police. See 18 U.S.C. S 922(t)(1); 18 Pa. Cons. Stat. Ann. S 6111(b)-(c) (West 2000). Although the purchaser may be a "straw" purchaser (a friend, relative or accomplice who acts as purchaser of the weapon for another) who then traffics the gun to prohibited purchasers for illicit purposes, the straw's dealings are not with the manufacturers. 12 Moreover, straw purchases are not the only means by which guns allegedly reach the "illegal market," and the chain is likely much longer and more varied.13

Further, as the district court observed, plaintiffs do not contend that the gun manufacturers "intend  to inflict injury

_____

11. We have taken our description of the distribution route in part from the plaintiffs' brief which includes more physical steps than the court set
forth.
12. Every straw purchaser commits a federal felony and violates Pennsylvania law by falsely stating that he or she is not buying the firearm for someone else. See 18 U.S.C.SS 924(a)(1)(A), (a)(2); 18 Pa. Cons. Stat. Ann. SS 6111(g)(2), (g)(4) (West 2000).

13. Additionally, despite plaintiffs' attempt to shorten the causal chain, the gravamen of the complaint is that guns are used in crime, with resulting deaths and injuries to City residents, prompting much of the expenses plaintiffs claim as damages. See app. at 11, 14-15, 17, 20-22, 24-26, 28-30, 34-35, 38-39 (Compl. PP 1, 10-12, 15-16, 24-29, 41-47, 61, 79, 82, 97).

15

upon the citizens of Philadelphia or to augment institutional costs." Beretta, 126 F. Supp. 2d at 904 (emphasis in original). At most, they allege awareness of the means by which prohibited purchasers end up possessing handguns. See id.; app. at 18 & 25 (Compl.PP 17(b) & 42).14

The derivative nature of the City's and the organizational plaintiffs' injuries also adds to the remoteness. Plaintiffs assert that they suffer "direct" and "independent" injuries involving some expenses that an injured resident cannot recover. Appellants' Br. at 81, 95; see also Appellants' Reply Br. at 26 (listing economic and educational costs, in addition to costs to "investigate and prosecute gun trafficking, to patrol gun infested neighborhoods . . . [and] to wash the blood off city streets after a shooting"). However, the fact that some of plaintiffs' damages are different from the damages suffered by direct victims of gun violence makes them no less derivative. See Laborers Local 17, 191 F.3d at 241 (union funds' claims rejected even though individual smokers could not bring RICO actions); City of Cincinnati, 2000 WL 1133078, at *8–9 & *11 (affirming dismissal of municipal lawsuit against gun manufacturers).

Furthermore, it is clear that plaintiffs seek reimbursement for expenses that arise only because of the

_____

14. At oral argument, counsel for the City argued that the complaint alleged intent on the part of the gun manufacturers. Having read the complaint, we find that, at most, it alleges the gun manufacturers' knowledge that some handguns reach prohibited purchasers. See, e.g., app at 10–11, 17–19, 21–23, 24 (Compl. PP 1, 17, 27–31, 40). Plaintiffs' claim of intent rests on a series of government reports concerning the process whereby firearms used in crime are traced as part of a law enforcement investigation. However, trace request information does not inform law enforcement agencies that a particular licensed distributor or dealer has committed an illegal act. Consequently, the trace request information does not put a gun manufacturer on notice that a specific distributor or dealer is engaged in unlawful firearm trafficking. See Department of Treasury/Bureau of Alcohol, Tobacco and Firearms, Commerce in Firearms in the United States at 22–23 (2000) (available online at <http://www.atf.treas.gov/pub/fire-explo_pub/ 020400report.pdf>); Hamilton v. Beretta U.S.A. Corp., 750 N.E.2d 1055, 1065 & n.7, n.8 (N.Y. 2001).

16

use of firearms to injure or threaten City residents. Those immediately and directly injured by gun violence-- such as gunshot wound victims -- are more appropriate plaintiffs than the City or the organizational plaintiffs whose injuries are more indirect. See Assoc. Gen. Contractors of California, Inc. v. California State Council of Carpenters, 459 U.S. 519, 542, 103 S.Ct. 897, 910-11 (1983) (stating that"The existence of an identifiable class of persons whose self-interest would normally motivate them to vindicate the public interest . . . diminishes the justification for allowing a more remote party . . . to perform the office of private attorney general."); Allegheny Gen. Hosp., 228 F.3d at 440; Steamfitters, 171 F.3d at 927.15

Additionally, plaintiffs' damages are speculative as it would be difficult to calculate how many incidents could have been avoided had the gun manufacturers adopted different policies. See Steamfitters, 171 F.3d at 926-28 (finding damages claim speculative). Moreover, as the district court noted, "for each individual injury, independent factors obviously come into play, such as criminal conduct, drug or alcohol abuse, or other misconduct by the owner." Beretta, 126 F. Supp. 2d at 905 (citation and internal quotations omitted). Finally, any effort to compensate plaintiffs would require the expenditure of enormous judicial resources to determine which defendants should bear what percentage of liability. See Camden County Bd. v. Beretta, 123 F. Supp. 2d at 263.

In addition to holding that absence of proximate cause bars plaintiffs' claims, the district court also properly concluded that the gun manufacturers are under no legal duty to protect citizens from the deliberate and unlawful use of their products. See Beretta, 126 F. Supp. 2d at 898-903 (analyzing factors and stating that "[T]he recognition of the legal duty for manufacturers to victims of gun violence is a matter properly addressed to Congress or the Pennsylvania Legislature."); see also Mazillo v. Banks, No. 3742-C of 1984, 1987 WL 754879, at *2 (Pa. Ct. Com. Pl.

_____

15. We are not suggesting that we have a view on whether persons directly injured by gun violence successfully can advance a claim against gun manufacturers as that possibility is not an issue here.

17

Feb. 6, 1987) (stating that "[N]o common-law duty exists under Pennsylvania law upon the manufacturer of a non-defective firearm to control the distribution of that product to the general public. Furthermore, no common-law duty exists under Pennsylvania law upon the remote vendor for marketing its product to people whom they should have known would have misused the product."), aff 'd, 536 A.2d 833 (Pa. Super. Ct. 1987); accord Hamilton v. Beretta U.S.A. Corp., 750 N.E.2d 1055 (N.Y. 2001) (finding no duty under New York law). Moreover, as we recognized in Camden County, "[i]n the negligence context . . . a defendant has no duty to control the misconduct of third parties." Camden County, 273 F.3d at 541 (citation omitted).

In sum, there are more direct victims, and the fact that these individuals may not be able to seek recovery for certain public services borne by the City or the organizational plaintiffs in no way obviates the fact that they are, nonetheless, the more directly injured parties. The causal connection between the gun manufacturers' conduct and the plaintiffs' injuries is attenuated and weak. Further, if we allowed this action, it would be difficult to apportion damages to avoid multiple recoveries and the district court would be faced with apportioning liability among, at minimum, the various gun manufacturers, the distributors, the dealers, the re-sellers, and the shooter.

Accordingly, we will dismiss plaintiffs' claims that tort liability should be assessed against gun manufacturers when their legally sold, non-defective products are criminally used to injure others.

IV. CONCLUSION

For the foregoing reasons, we will affirm the judgment of the district court entered December 20, 2000.

A True Copy:
Teste:

        Clerk of the United States Court of Appeals
        for the Third Circuit

18